ANNE ARBUTINA, Individually and as Administratrix of the Estate of JOSEPH ARBUTINA, Deceased, Appellant, v KUMARAN BAHULEYAN, Respondent. (Appeal No. 1.)

ANNE ARBUTINA, Individually and as Administratrix of the Estate of JOSEPH ARBUTINA, Deceased, Appellant, v RAYMOND A. HUDSON, Respondent. (Appeal No. 2.)

ANNE ARBUTINA, Individually and as Administratrix of the Estate of JOSEPH ARBUTINA, Deceased, Appellant, v SISTERS OF CHARITY HOSPITAL, Respondent.(Appeal No. 3.)

ANNE ARBUTINA, Individually and as Administratrix of the Estate of JOSEPH ARBUTINA, Deceased, Appellant, v CORNELIUS J. O'CONNELL, Respondent. (Appeal No. 4.)

ANNE ARBUTINA, Individually and as Administratrix of the Estate of JOSEPH ARBUTINA, Deceased, Appellant, v GASPARE ALFANO, Respondent. (Appeal No. 5.)

Fourth Department, May 23, 1980

## APPEARANCES OF COUNSEL

*Dempsey & Dempsey (Helen Kaney Dempsey* of counsel), for appellant.

*Damon, Morey, Sawyer & Moot (Brian Fitzgerald* of counsel), for Kumaran Bahuleyan, respondent.

*Brown, Kelly, Turner, Hassett & Leach (Gordon David Tresch* of counsel), for Anthony Hudson and others, respondents.

*O'Shea, Adamson, Reynolds & Napier (William M. Martin* of counsel), for Sisters of Charity Hospital, respondent.

## OPINION OF THE COURT

SIMONS, J.

Plaintiff seeks to recover damages for the conscious pain and suffering and wrongful death of her husband. Her complaint alleges causes of action in negligence and malpractice arising November 28, 1975 when decedent died while a patient at the defendant hospital and while under the care of defendant doctors. The conscious pain and suffering action was commenced within the statutory period but the wrongful death action, subject to a shorter two-year limitation, was not (see CPLR 214-a; EPTL 5-4.1). Defendants originally failed to plead the Statute of Limitations as an affirmative defense, but they subsequently moved to amend their answers and Special Term granted their motions. Plaintiff contends that the court abused its discretion in granting leave to amend because her delay in instituting the action was occasioned by defendants' misconduct and, alternatively, that defendants should be estopped from asserting the statute.

The rules provide that leave to amend pleadings "shall be freely given" absent prejudice or surprise resulting directly from the delay (CPLR 3025, subd [b]; *Fahey v County of Ontario,* 44 NY2d 934; *Leslie v Hymes,* 60 AD2d 564). Since plaintiff has shown neither prejudice nor surprise, defendants may amend unless they are equitably estopped from asserting the Statute of Limitations. That determination may not be made on affidavits in this case and since the question of defendants' estoppel should not be submitted to the trial jury, we reverse and remit the matter to Special Term for a

hearing on the issue (see CPLR 2218). Before the hearing, plaintiff should submit a reply to the affirmative defense of the Statute of Limitations and set forth therein the factual basis of the alleged estoppel (see CPLR 3011; Siegel, New York Practice, § 229, pp 276-277).

■ It is a well-recognized legal principle that when a defendant, by a deception, has caused a plaintiff to delay suit on a known cause of action until the Statute of Limitations has run, the courts will apply the doctrine of estoppel to prevent an inequitable use of the statute by defendant as a defense (*Simcuski v Saeli,* 44 NY2d 442, 448-450; *General Stencils v Chiappa,* 18 NY2d 125, 127-128; *Erbe v Lincoln Rochester Trust Co.,* 13 AD2d 211, 213-215, mot for rearg den and mot for lv to app den 14 AD2d 509, app dsmd 11 NY2d 754). The rule is derived from the familiar legal maxim that no man may profit from his own wrong (see *Glus v Brooklyn Eastern Term.,* 359 US 231, 232-233). Plaintiff need not prove that defendant is guilty of actual fraud or intent to deceive; whether he intended a wrong is immaterial. If defendant's conduct was calculated to mislead and plaintiff relied upon it, that is enough and the estoppel is imposed to prevent him from obtaining an unconscionable advantage (see *Simcuski v Saeli, supra,* p 449; *Robinson v City of New York,* 24 AD2d 260, 263; Fraud, Misrepresentation, or Deception as Estopping Reliance on Statute of Limitations, Ann. 43 ALR3d 429, 444).

■ Two novel issues are presented by this appeal because of the nature of defendants' alleged misconduct and because it terminated before the expiration of the statutory period. Plaintiff's claim of estoppel rests upon these allegations: that decedent was treated by defendant doctors as a patient at defendant hospital from October 13, 1975 until he died on November 28, 1975; that plaintiff's counsel sought decedent's hospital record on August 3, 1976, shortly after being retained, but that the records were not delivered to her until September 23, 1977, almost two years after decedent's death. Counsel claims that because of defendants' delay in delivering the hospital records she had insufficient time to examine them and to obtain expert assistance upon which to base a responsible decision on whether plaintiff had grounds for a suit and, if so, which potential defendants she should sue. Counsel alleges that the hospital should be estopped from asserting the statute because it caused this delay and that defendant doctors similarly should be estopped because they contributed to the

delay. She alleges that the hospital employees explained their failure to deliver a copy of the hospital records by advising her that the records could not be forwarded until the doctors completed the discharge summary and until certain parts of the record which had been lost were reconstructed or replaced. These allegations raise issues of fact about whether plaintiff possessed sufficient knowledge to institute her action before the statute had run, and, if not, whether her delay in commencing suit was the result of a justifiable reliance that the hospital would eventually deliver the record to counsel for timely inspection and commencement of suit if litigation was indicated. In so holding we note that plaintiffs in malpractice actions are confronted with somewhat different problems than plaintiffs in negligence actions generally. Because of the trust necessary to the physician-patient relationship, they may be slow to suspect malpractice and, once suspecting it, they may be unable to verify it. Particularly is this so when the patient dies or the alleged malpractice occurs while the patient is under anesthesia. During the initial legal review, the patient or his representative may be completely dependent upon the hospital record to discover malpractice or allay suspicion of it. We hold, therefore, that an unreasonable delay in delivering hospital records to an attorney consulted in a suspected case of malpractice may result in defendants being estopped from later asserting the Statute of Limitations if the delay prevented the timely commencement of an action.

Defendants contend that preaction discovery was available and that plaintiff's failure to use it forecloses her from urging estoppel. Whether discovery was a necessary alternative under the circumstances (assuming that plaintiff could make a sufficient showing that she had a cause of action [see Siegel, New York Practice, § 352, p 437]) is also a question of fact. Counsel alleges that she was told that the records were not available because they were incomplete. Thus, a court order may not have produced a complete record and discovery may have required needlessly deposing several physicians or employees who may or may not have had knowledge upon which plaintiff could base a complaint.

The other unusual aspect of his case is that plaintiff's counsel received the hospital records almost two months before the period of limitations expired in the wrongful death cause of action. Defendants contend, therefore, that their conduct did not prevent a timely commencement of the action,

and that they may not be equitably estopped from asserting the Statute of Limitations (see *Mikulka v New York City Tr. Auth.,* 56 AD2d 595; *509 Sixth Ave. Corp. v New York City Tr. Auth.,* 24 AD2d 975; Plaintiff's Diligence as Affecting His Right to Have Defendant Estopped from Pleading the Statute of Limitations, Ann. 44 ALR3d 760, §§ 5, 6, pp 768-774; and see *Simcuski v Saeli, supra,* pp 449-450). The date when defendants' misconduct ceased is important but, standing alone, it is not always dispositive. Without knowing what information was available to plaintiff's counsel and without examining the hospital record, we cannot say that she could have or should have proceeded to suit without expert advice. Certainly, we would not require a plaintiff to commence a lawsuit against a defendant without some responsible basis for believing that party legally liable to him.

Moreover, counsel contends that she refused to sue the doctors or the hospital without a basis in fact for believing the parties culpable because she feared that to do so might expose her personally to liability to the party sued (see *Drago v Buonagurio,* 89 Misc 2d 171, revd 61 AD2d 282, revd 46 NY2d 778). Under the novel facts of the *Drago* case, Special Term decided that no liability could be imposed upon an attorney for instituting a groundless malpractice action on behalf of a client against a physician. That case was on appeal (and, it is claimed, was much discussed among members of the trial bar) during the period involved here. It appears that attorneys had reason to be apprehensive about such suits, the decision of Special Term notwithstanding, because the Appellate Division subsequently held that a doctor against whom a baseless malpractice suit had been commenced, had a cause of action against the attorney suing him.

The orders should be reversed and the matter remitted to Special Term for a factual determination of whether defendants are equitably estopped from pleading the Statute of Limitations.

CARDAMONE, J. P., SCHNEPP, CALLAHAN and WITMER, JJ., concur.

Orders unanimously reversed, without costs, and matter remitted to Special Term for further proceedings, in accordance with opinion by SIMONS, J.