*726 OPINION OF THE COURT
Edward M. Horey, J.
The motion at bar is brought by the defendants. It seeks a dismissal of the plaintiffs summons on the grounds that the action for negligence commenced thereby is time barred under the applicable Statute of Limitations.
It is agreed that the summons was served three years and one day after the accrual of the cause of action. Thus the starting point of our consideration is that the plaintiffs’ action was not timely commenced albeit that the delay in so doing was less than 24 hours.
The plaintiffs assert that under all the facts surrounding the matter the defendants should be estopped from asserting the defense of the Statute of Limitations or the delay should be judicially forgiven as law office failure.
Since it was held in Arbutina v Bahuleyan (75 AD2d 84 [4th Dept 1980]), a decision binding on this court, that such issues may not be determined on affidavits, this court directed that a hearing be held. Two days of testimony were taken.
The proof adduced at the extended hearings discloses that the plaintiffs’ action for negligence arose on January 27, 1983 when the defendant drove without stopping through a stop sign and struck the plaintiffs automobile causing plaintiffs’ injury. The defendant was thereafter charged with failure to obey a stop sign and pleaded guilty to that charge. The insurance carrier, having primary coverage on the defendant’s automobile was the Hartford Insurance Company (hereinafter referred to as Hartford). The limits of its policy were $10,000. It is agreed that early in the proceedings the representative of that company offered the limits of its policy ($10,000) to the plaintiffs. It also appears that an additional policy of liability insurance protected the defendants. That policy covering the defendant’s mother also provided protection to the defendant who was living with her. This policy in the jargon of negligence lawyers is referred to as "non owned coverage.” It was provided by the Royal Globe Insurance Company (hereinafter referred to as Royal Globe).
It is the extended negotiations between the attorney for the plaintiffs, Frank Della Posta, Esq., and the claims representative of Royal Globe, one John McClory, which are in issue. The negotiations between plaintiffs’ attorney and the Royal Globe representative were extensive and protracted. They were both oral and in writing.
*727 The court notes in particular the following. On May 31, 1984, plaintiffs’ attorney by letter to the Royal Globe Insurance Company requested a disclosure of that company’s policy limits. He also requested information on whether that carrier wished a physical examination of the plaintiff husband. This letter represented the fourth request by plaintiffs’ attorney for the policy limits. A telephone request for such information having been made earlier on March 26, 1984 and a second on April 2, 1984 and a letter dated April 19, 1984 having been the third.
By letter dated June 13, 1984 to plaintiffs’ attorney, the claims representative of the Royal Globe, McClory, stated unequivocally, "Our limits are $25,000.” Receiving and reviewing a requested financial affidavit from the defendant indicating that he had no assets to satisfy a judgment in excess of policy limits, the plaintiffs’ attorney undertook steps to bring the claim to conclusion by settlement for $35,000, $10,000 of which would be paid by Hartford and $25,000 by Royal Globe.
Significantly, it was at this point that the Royal Globe representative, McClory, advised the plaintiffs’ attorney by telephone on November 4, 1984 that his previous statement of coverage limits of $25,000 was erroneous. He now stated the limit of the Royal Globe policy was $50,000.
On December 17, 1984 the plaintiffs’ attorney by letter requested confirmation of the newly disclosed limits of the Royal Globe policy.
Failing to receive such confirmation plaintiffs’ attorney again by letter dated September 10, 1985 requested a photocopy of the policy declaration sheets. Within three days after forwarding this letter, plaintiffs’ attorney became severely ill, was hospitalized, underwent surgery and was incapacitated from the practice of law for a 3Vi-month period, returning to practice on a limited basis on or about January 1, 1986.
On January 25, 1986, Charles Kysor, Esq., a law partner of plaintiffs’ attorney Della Posta, caused a summons with notice to be forwarded by mail to the Sheriff of Chautauqua County. Copies where served by the Sheriff upon the defendants on January 28, 1986, one day after the running of the Statute of Limitations.
The court turns at this point to consider the applicable law. In issue, as noted, as an asserted bar to the commencement of an action is the defense of the Statute of Limitations. Relevant to this motion are the provisions of CPLR 214 (5) which *728 limit the commencement of an action for personal injury to a period of three years.
Addressing the defense of the Statute of Limitations generally, CPLR 201 provides in relevant part that, "No court shall extend the time limited by law for the commencement of an action.”
Despite the rigidity of the statutory prohibition of CPLR 201 it is well established that a court may estop a defendant from asserting the defense of the Statute of Limitations. It has been said that estoppel has a power of mastery over all other rules. (See, Melahn v Hearn, 92 AD2d 319, 333 [2d Dept 1983], and cases there cited.) Estoppel is applied on well-established principles of equity. It is done to prevent misconduct on the part of a defendant that makes it unfair for such defendant to hide behind the defense and employ it as a weapon to defeat a legitimate cause or action. The rule is founded on the familiar maxim that no man should be permitted to profit from his own wrong. (See, Simcuski v Saeli, 44 NY2d 442, 448-450; General Stencils v Chiappa, 18 NY2d 125, 127-128; Arbutina v Bahuleyan, 75 AD2d 84, 86, supra [4th Dept 1980, opn Simons, J.]; McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C201:6.) It is this foundation which distinguishes the application of an estoppel from the relief of a law office failure. The former is grounded in sanction for wrongdoing, the latter in forgiveness of error.
While the result from the application of the two principles may overlap, the nicety of distinction is important. It is important because the same Legislature that enacted CPLR 3012 (d) as a statute to permit judicial excuse of default in timely pleading nonetheless continued unchanged the provisions of CPLR 201 which prohibit a court from extending the time for pleading provided in the Statute of Limitations.
The continuance unchanged of the legislative prohibition of CPLR 201 together with the fact that the enactment of CPLR 3012 (d) had as its limited legislative purpose the overrule of the rigid rule of Barasch v Micucci (49 NY2d 594 [1980]) and Eaton v Equitable Life Assur. Socy. (56 NY2d 900 [1982]) which had denied courts the right to forgive delay in pleading in certain instances. This court finds it significant that neither case dealt with default in pleading barred by the Statute of Limitations. Rather, Eaton involved a default in timely filing an answer within the statutory 30-day period or a stipulated time extension. Barasch involved a failure to timely file a *729 complaint within 20 days of a demand therefore following timely service of a bare summons. These factors lead this court to the following conclusion. That conclusion is that despite the generality of the terms of CPLR 3012 (d) which provides broadly that a "court may extend the time to appear or plead, or compel the acceptance of a pleading untimely served,” that nonetheless such statutory provisions do not authorize a judicial extension of the time to plead beyond the time prescribed by the Statute of Limitations.
This court holds that when it is the Statute of Limitations that bars pleading, relief in the time to plead must come from the application of the principle of estoppel and not from excuse of law office failure under CPLR 3012 (d). In reaching its conclusion, the court concedes it has not found any decisional law in support of it. Neither has it found any to the contrary. The issue appears to be one of first impression. It is conceded that strong argument can be made for a differing view.
The importance of the distinction which has been drawn and of the conclusion reached when applied to the motion at bar is this: this court may not extend the time to plead because of the illness of the plaintiffs’ attorney. Neither can it extend such time because of the few hours of miniscule tardiness in timely serving the summons.
The court considers now the doctrine of estoppel to the motion at bar. As noted it is the only applicable principle available. Relevant here is the explanation of the doctrine of estoppel as determined in Arbutina v Bahuleyan (75 AD2d 84, supra [4th Dept 1980]). There it was stated "Plaintiff need not prove that defendant is guilty of actual fraud or intent to deceive; whether he intended a wrong is immaterial. If defendant’s conduct was calculated to mislead and plaintiff relied upon it, that is enough and the estoppel is imposed to prevent him from obtaining an unconscionable advantage (see Simcuski v Saeli, supra, p 449; Robinson v City of New York, 24 AD2d 260, 263; Fraud, Misrepresentation, or Deception as Estopping Reliance on Statute of Limitations, Ann. 43 ALR3d 429, 444).” (Arbutina v Bahuleyan, supra, at 86 [italics added].)
In considering misconduct of the defendant, note is pointedly made that it was only after four requests for a statement of policy limits by the plaintiffs’ attorney made repeatedly over a three-month period that the defendants’ representative, McClory, advised that the limits were $25,000. That statement *730 was concededly erroneous. Aware that the plaintiffs’ attorney was considering settlement on that advice, Royal Globe’s representative waited five months until he advised by telephone that the limits were $50,000. It was at this point that plaintiffs’ attorney demanded confirmation of the policy limits. He did not receive it. He repeated his demand and still did not receive it. Such information was not only withheld by Royal Globe before the summons was served, it was withheld after the motion was made. It was withheld during the hearing on the motion. In truth Royal Globe has never produced confirmation proof of its policy limits to this day.
The limits of insurance coverage which plaintiffs’ attorney sought is information to which he is entitled as a matter of statutory right. (See, CPLR 3101 [f].)
In speaking of such disclosure it was sagely observed in Rautine v Preston (84 Misc 2d 156, 158 [Sup Ct, Chemung County]) that: "it is obviously the intention of the Legislature that settlement negotiations be conducted with full knowledge of the amount of insurance coverage available. Settlement negotiations can best be conducted when all of the facts are before the court and the parties. One of the factors which enters into any settlement negotiation is the amount of money available to pay the plaintiff’s demand. The plaintiffs should not be compelled to negotiate with the defendants in the dark. It is the opinion of this court, and the opinion of other courts which have in the past attempted to grant disclosure of insurance limits to plaintiffs on pretrial discovery, that the likelihood of settlement of the action is greater if the policy limits are disclosed prior to the trial.”
This court finds as a fact that the plaintiffs’ attorney imposed a condition of proof of policy limits as a condition of settlement. It finds that the Royal Globe Insurance Company was acutely aware of this requirement. It finds that the attempt on the part of the Royal Globe Insurance Company to furnish the required information consisted of (1) a phone call by claims adjuster McClory to a local agent in Buffalo with advice that such office did not have a copy of the policy, (2) a phone call to the Buffalo office of the Royal Globe Insurance Company with advice that that office did not have the information and (3) a telephone call to the Syracuse underwriting office where a copy of the policy with declaration sheet was supposed to be maintained. The advice received there was that the Syracuse office was having difficulty in finding the file. Those efforts and those efforts only concluded adjuster McClo *731 ry’s attempts to secure the requested proof of policy limits. Of the plaintiffs’ attorney’s last request for such proof, adjuster McClory states without explanation that he simply left it "unanswered.”
While upon the hearing, adjuster McClory proffered the excuse that his initial misinformation of a $25,000 limitation was a result of misreading a policy limitation on property damage for personal injury. This explanation appears to have been a belated one, because it does not appear that it was ever given at any time to plaintiffs’ attorney. This court regards it as significant that adjuster McClory never offered any excuse for his continuing failure to supply proof of the policy limits, which he admittedly knew was a requirement for settlement and which he acknowledged was information that no "good attorney” should settle without obtaining.
The testimony of adjuster McClory was that he never offered the limits of the Royal Globe Insurance Company policy by way of settlement to plaintiffs’ attorney. This is disputed by plaintiffs’ attorney who swore that the policy limits were offered in settlement by adjuster McClory. The court is of the opinion that it is not necessary to resolve this dispute.
What is clear and found as a fact is that adjuster McClory never stated that the plaintiffs’ claim could not be settled by Royal Globe’s payment of $50,000. The court finds that by his conduct and his actions, adjuster McClory led the plaintiffs’ attorney to believe that the claim could be settled for such payment. The only condition ever imposed by adjuster Mc-Clory was that the plaintiff furnish certain proof referable to lost wages and medical reports. These were furnished by the plaintiffs’ attorney. Thus, the condition imposed by the insurer was satisfied. Unsatisfied was the condition of disclosure of policy limits imposed by the plaintiffs’ attorney. This was information resting solely within the knowledge of the Royal Globe Insurance Company. Adjuster McClory never advised plaintiffs’ attorney that such information was unavailable. Rather by words and conduct he intimated that such information would be forthcoming.
Further concerning the request, adjuster McClory stated "the last communication my company had from Mr. Della Posta before the statute of limitations ran was a letter of September 10, 1985 wherein he requested that our policy limits of $50,000 be confirmed. This letter went unanswered. ” (Italics added.)
*732 The noted reference to the Statute of Limitations in adjuster McClory’s affidavit together with his admission of a possible conversation concerning the Statute of Limitations with his superior lends suspicion to the fact that he was acutely aware of the running of the statute, if plaintiffs’ attorney was not. He made no mention of the fact to plaintiffs’ attorney. He did not state that continuing negotiations of settlement were fruitless or that they were terminated. Ostensibly he continued negotiations withholding in the process that information which he knew was necessary to conclude the matter.
The court finds that what is presented on this motion is that of an insurer who holds out the hope of an amicable adjustment of the loss, and by its failure to make a relevant and necessary disclosure of policy limits causes the insured to delay his action until the elapse of the Statute of Limitations and then pleads that statute as a defense to the action. There is no proof of harm to the insurer as a consequence of the delay. Only an injured plaintiff with an acknowledged substantial claim will be damaged. .The record discloses that the defendants have never contested the issue of liability for the accident and its resulting injuries. Any question of the amount of plaintiffs’ claim can be resolved by trial if not negotiation.
This court finds the conduct of the Royal Globe Insurance Company unconscionable and inequitable. Certainly it was "conduct * * * calculated to mislead and plaintiff relied upon it”. That is enough. (Arbutina v Bahuleyan, 75 AD2d 84, 86, supra [4th Dept 1980], principle reaffirmed in Procco v Kennedy, 88 AD2d 761 [4th Dept 1982], and Simcuski v Saeli, 44 NY2d 442, 448-450, supra; 31 NY Jur, Insurance, § 1591, at 472.)
This court holds that the defendants are estopped from pleading the Statute of Limitations.