ORIGINAL PROCEEDING IN PROHIBITION
George W. Draper III, Judge
Bob T. Beisly II (hereinafter, “Relator”), the defendant in the action below, seeks a writ of prohibition to prevent the circuit court from taking any further action in Wilma Jean Irwin’s (hereinafter, “Irwin”) wrongful death suit, other than to dismiss it with prejudice. Relator contends Irwin’s suit is time-barred by section 537.100, RSMo 2000.[1] This Court holds the circuit court did not abuse its discretion in overruling Relator’s motion to dismiss because the doctrine of equitable es-toppel forecloses Relator from relying on the statute of limitations as an affirmative defense due to the fraudulent concealment of his wrongdoing. The preliminary order in prohibition is quashed.
Factual and Procedural History
On July 15, 2009, Relator’s estranged wife, Belinda Beisly (hereinafter, “the decedent”), was found dead inside her home from multiple gunshot wounds to her head and chest. Her death was ruled a homicide. Decedent’s homicide remained unsolved until February 8, 2013, when the state charged Relator and Jeremy Maples (hereinafter, “Maples”) with the decedent’s murder. The felony complaint alleged Maples committed first-degree murder by shooting decedent, and it charged Relator with aiding and encouraging Maples in committing the decedent’s murder.
On February 13, 2013, Irwin, the decedent’s mother, filed a wrongful death action against Relator and Maples. Irwin alleged Maples shot and killed the decedent in exchange for money received from Relator. Irwin’s petition further alleged Maples and Relator kept their arrangement from being discovered from law enforcement and the decedent’s family by: (1) disguising the nature of the decedent’s death by staging it to look like a home invasion and using a weapon that could not be traced; (2) lying to law enforcement; (3) destroying evidence; and (4) denying them involvement in the decedent’s death.
Relator filed a motion to dismiss Irwin’s petition, arguing her claim was time-barred by section 537.100, the wrongful death statute of limitations, because it was filed more than three years after the decedent’s death. Irwin filed suggestions in opposition, arguing Relator and Maples fraudulently concealed them wrongdoing as alleged in her petition. Irwin stated this conduct made it impossible for her to identify perpetrators and name defendants, which were prerequisites to maintaining a civil suit. Irwin also alleged Relator and Maples should be estopped from relying on the statute of limitations as a defense due to their fraudulent concealment of their wrongdoing.
The circuit court acknowledged the general rule that a wrongful death action accrues when the decedent dies. However, the circuit court found it should not construe the wrongful death statutes so strictly so as to avoid their purposes. The circuit court overruled Relator’s motion, reasoning that to allow the wrongdoers to escape civil liability on the basis of the statute of limitations in this case was “shocking to the conscience.”
Relator sought a writ of prohibition in the court of appeals. After opinion by that court, this Court granted transfer pursuant to Mo. Const, art V, sec. 10.
*437 Standard of Review
This Court has jurisdiction to issue original remedial writs. Mo. Const, art. V, sec. 4. “Prohibition is a discretionary writ that only issues to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extrajurisdictional. power.” State ex rel. Schwarz Pharma, Inc. v. Dowd, 432 S.W.3d 764, 768 (Mo. banc 2014). A writ of prohibition “is the appropriate remedy to prevent a lower court from proceeding on an action barred by the statute of limitations.” State ex rel. Holzum, 342 S.W.3d 313, 315 (Mo. banc 2011).
Wrongful Death Statute of Limitations
Relator argues he is entitled to a writ of prohibition that will prohibit the circuit court from taking any further action in the underlying case other than to enter an order dismissing Irwin’s suit with prejudice, because the action is time-barred by section 537.100. Relator claims none of the tolling provisions in section 537.100 apply to Irwin’s cause of action.
Section 537.080.1 sets forth the cause of action for wrongful death and delineates who is entitled to sue for damages. Section 537.100 states that every action brought pursuant to section 537.080 “shall be commenced within three years after the cause of action shall accrue.” Section 537.100 contains explicit tolling exceptions: (1) if the plaintiff is unable to serve an absent defendant with service of process and (2) if the plaintiff files a voluntary non-suit or if the plaintiffs judgment is reversed and remanded on appeal. These exceptions do not apply to toll Irwin’s cause of action.
Irwin argues Relator’s success at concealing his wrongdoing caused the accrual of her wrongful death claim to be delayed. Irwin claims she was unable to file suit until she discovered who was responsible for the decedent’s death, and this did not occur until Relator and Maples were arrested for the decedent’s murder.

Accrual Distinct from Tolling

The terms “accrual” and “tolling” are distinct legal principles that often produce the same outcome. Generally, “[a] cause of action accrues ... when the right to sue arises.” Hunter v. Hunter, 361 Mo. 799, 237 S.W.2d 100, 103 (1951). Accrual also triggérs the running of the statute of limitations. Id. Tolling, on the other hand, occurs when a party shows facts that act to remove or interrupt the bar of the statute of limitations to a cause of action. 2 Mo. Practice Series, Methods of Practice: Litigation Guide, § 5.9 (4th ed. 2002). Thus, while every cause of action has a time of accrual, not every cause of action is subject to tolling. Further, if a cause of action has not accrued, there is nothing to toll, because an event or circumstance cannot interrupt or remove that which has never started.

Accrual and Wrongful Death Actions

“In determining whether an applicable statute of limitation bars recovery, it is necessary to establish when that cause of action accrued.” Jepson v. Stubbs, 555 S.W.2d 307, 311 (Mo. banc 1977). Section 537.100 does not define “accrue” for purposes of the wrongful death statute of limitations. In Coover v. Moore, 31 Mo. 574, 576 (Mo.1862), this Court -stated the cause of action under the wrongful death statute accrued “at the death.” In Kennedy v. Burner, 36 Mo. 128 (Mo.1865), this Court explained more fully: -
We think the cause of action accrued whenever the defendant’s liability became perfect and complete. Whenever the defendant had done an act which made him liable in damages, and there was a person in esse to whom the dam *438 ages ought to be paid and who might sue for and recover the same, then clearly the cause of action had accrued as against him. When, then, did this liability take place? Evidently at the death of [decedent] ... and the statute commenced running from that time.
Kennedy, 36 Mo. at 130. See also Cummins v. Kansas City Pub. Sero. Co., 334 Mo. 672, 66 S.W.2d 920, 929 (1933) (finding the statute provides for one cause of action that accrues at the time of death), and Nelms v. Bright, 299 S.W.2d 483, 487 (Mo. banc 1957) (accord).
This Court addressed the issue of whether a wrongful death cause of action accrued and caused the statute of limitations to begin to run at the time of death or upon the discovery of the identity of the alleged tortfeasor in Frazee v. Partney, 314 S.W.2d 915 (Mo.1958). In Frazee, a family was involved in an accident caused by another vehicle swerving into its lane when the driver fell asleep at the wheel in October 1954. There was no contact between the cars, but the family’s car went down an embankment and overturned several times. The mother and one of the children died as a result of the accident. The other driver did not stop immediately and, when he did, he did not see anyone, so he continued on his way, unaware there had been an accident. The family did not learn the driver’s identity until March 1956. Frazee, 314 S.W.2d at 917.
The family filed a wrongful death suit against the driver in September 1956. The petition alleged the defendant “fraudulently, intentionally, deliberately, willfully, maliciously, and of his spite absented himself and concealed his identity from the plaintiffs and all other persons ...” from the time of the accident until March 1956. The driver argued the family’s suit was barred by the statute of limitations, which .at that time was one year. This Court addressed two issues: (1) whether the driver’s acts operated to toll or extend section 537.100’s limitations period and (2) when the family’s cause of action accrued. Id. at 917.
With respect to tolling, this Court determined the wrongful death statute contained a special statute of limitation. Accordingly, section 516.280’s fraudulent concealment tolling provision did not apply. Id. at 919. This Court explained, “This [C]ourt has uniformly held that where a statute of limitation is a special one, not included in the general chapter on limitations, the running thereof cannot be tolled because of fraud, concealment or any other reason not provided in the statute itself.” Id. (quoting State ex rel. Bier v. Bigger, 352 Mo. 502, 178 S.W.2d 347, 351 (1944)). In reaching this conclusion, this Court also examined the legislature’s intent, including the fact that the legislature had twice enacted specific tolling exceptions in the wrongful death statute, but those exceptions did not extend to the driver’s fraudulent concealment conduct. Id. at 920.
In addressing the family’s argument that its cause of action did not accrue until it learned the identity of the wrongdoer, this Court recognized the case turned on an inability to discover the identity of the defendant and not on the existence of a cause of action. Id. While this Court was cognizant of the family’s difficulty in serving an unknown defendant, this Court stated, “We are construing the positive terms of a statute which starts the limitation in motion from the ‘accrual’ of the cause of action, not from the time when one may be effectively commenced.” Id. at 921. This Court held that “the cause of action for wrongful death accrues at the death.” Id. The family’s cause of action accrued in October 1954 when the mother and child died. The petition filed in September 1956 *439 was time-barred. The Court recognized its holding resulted in a hardship after it was “forced to construe the cold, clear words of the statute.” Id.
Relator contends Frazee is directly on point and disposes of this writ because Irwin’s claim accrued when the decedent died, and there is no dispute her claim was filed beyond the three-year statutory period. Irwin disagrees, maintaining Frazee was decided wrongly and should no longer be followed because of holdings in two subsequent wrongful death cases.
In O’Grady v. Brown, 654 S.W.2d 904 (Mo. banc 1983), this Court held an unborn, viable fetus was a “person” under the wrongful death statute. O’Grady, 654 S.W.2d at 906-07. This Court explained the wrongful death act was “designed to mend the fabric of the common law, not to weaken it.” Id. at 908. This Court rejected the argument that the wrongful death statute had to be construed strictly and, instead, applied the statute’s language “with a view to promoting the apparent object of the legislative enactment.” Id. at 907-08 (quoting United Air Lines, Inc. v. State Tax Comm’n, 377 S.W.2d 444, 451 (Mo. banc 1964)). This Court recognized its duty “to perceive the import of major legislative innovations and to interweave the new legislative policies with the inherited body of common law principles.” Id. at 908 (quoting Moragne v. States Marine Lines, Inc., 398 U.S. 375, 392, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339 (1970)). This Court also set forth three basic objectives the wrongful death statute was enacted to achieve: (1) “to provide compensation to bereaved plaintiffs for their loss;” (2) “to ensure that tortfeasors pay for the consequences of their actions;” and (3) “to deter harmful conduct which might lead to death.” Id. at 909.
In Howell v. Murphy, 844 S.W.2d 42 (Mo.App.W.D.1992), the plaintiffs appealed the dismissal of their wrongful death suits as time-barred against a man who tortured and murdered their loved ones, then concealed evidence of his crimes for more than five years after their deaths. Howell, 844 S.W.2d at 43-44. In reversing and remanding the case, the court of appeals found O’Grady “announced a major shift in its interpretation of Missouri’s wrongful death statute.” Id. at 46. After setting forth the three-fold purpose of the wrongful death statute announced in O’Grady, the Western District concluded, “The reasoning in Frazee is superseded by O’Grady.” Id. The court distinguished Fra-zee’s finding that it was not concerned with the existence of a cause of action but, rather, the inability to discover the identity of the wrongdoer. The Howell court stated it was “concerned with the question of the existence of the cause of action.” Id.
The Howell plaintiffs presented evidence that their loved ones were presumed missing, but not dead, until their body parts were discovered or the defendant pleaded guilty to causing their deaths and reported specific dates of death. Id. at 45. Thus, the plaintiffs had no choice but to wait before asserting a wrongful death action because the law contained a statutory presumption of life for missing persons. Accordingly, the plaintiffs could not assert any action within a five-year period until they had facts to overcome the statute’s presumption. Id. at 47. The Western District held that, given the defendant’s concealment of the bodies and the statute’s presumption that the victims were only missing and not dead, the wrongful death statute of limitations “was tolled until the plaintiffs could, by reasonable diligence, ascertain they had an action.” Id.
Irwin contends Howell’s reasoning is compelling and should control the outcome here. Irwin argues that when Relator and *440 Maples concealed their participation in the decedent’s murder, they made it impossible for her to enforce her rights in a timely manner. Conversely, Relator maintains Howell is distinguishable and that Frazee remains good law despite Howell’s statement to the contrary.
While this Court agrees with Howell’s statement that O’Grady announced a major shift in its interpretation of Missouri’s wrongful death statute, this Court finds Howell erroneously determined this Court’s holding in O’Grady superceded Frazee. “Generally, this Court presumes, absent a contrary showing, that an opinion of this Court has not been overruled sub silentio.” State v. Honeycutt, 421 S.W.3d 410, 422 (Mo. banc 2018). ‘‘Sub silentio is defined as ‘without notice being taken or without making a particular point of the matter in question.’ ” Id. (quoting Webster’s Third New International Dictionary 2279 (1976)). “If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of sub silentio.” Id. (quoting Keller v. Marion Cnty. Ambulance Dist., 820 S.W.2d 301, 308 (Mo. banc 1991) (Holstein, J., dissenting)). O’Grady did not discuss the wrongful death statute of litaitations or cite Frazee for any proposition of law. Further, Frazee and O’Grady are factually and legally dissimilar. O’Grady was concerned with the definition of “person” for purposes of pursuing a wrongful death claim, while Frazee addressed whether the wrongful death statute of limitation could be tolled. Frazee remains good law, and Howell’s statement to the contrary should no longer be followed.
Relator alleges Frazee controls the outcome here. In both Frazee and the instant case, the parties had knowledge of the decedents’ deaths and the wrongfulness of the deaths. What the aggrieved parties did not know was the identity of the tortfeasors. What distinguishes Fra-zee from this case is Irwin’s claim that equitable estoppel forecloses Relator from asserting the wrongful death statute of limitations as a defense to her suit due to the fraudulent concealment of his wrongdoing.
Equitable Estoppel
A basic common law maxim, deeply rooted in this country’s jurisprudence and older than the country itself, is that no person shall take, advantage of or benefit from his or her wrong. Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 232, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959). “[T]his principle has been applied in many diverse classes, of cases by both the law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.” Id. at 232-33, 79 S.Ct. 760, 762. The principle of equitable estoppel was described in Glus:
[W]here one party has by his representation or his conduct induced the other party to a transaction to give him an-advantage which it would be against equity arid good conscience for him to assert, he would not in a court of justice be permitted to avail himself of the advantage .... [T]he general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.
Glus, 359 U.S; at 234, 79 S.Ct. 760 (quoting Union Mut. Ins. Co. v. Wilkinson, 80 U.S. (13 Wall.)222, 233, 20 L.Ed. 617 (1871)).[2]
*441 “The purpose of the doctrine of equitable estoppel is to prevent a party from taking inequitable advantage of a situation he ■ or she has caused.” Weiss v. Rojanasathit, 975 S.W.2d 113, 120 (Mo. banc 1998). “A party is estopped to plead the statute of limitations only if that party made positive efforts to avoid the bringing of the suit against her or misled the claimants.” Id. To apply the doctrine of equitable estoppel to bar a defendant’s statute of limitations defense, the defendant must have acted affirmatively to induce the plaintiff to delay bringing the action. Id[3] Several states have cited Glus’ equitable estoppel principles to prevent a defendant from asserting the statute of limitations as an affirmative defense in wrongful death actions when that defendant has committed fraud to conceal his or her actions.[4] See Arbutina v. Bahuleyan, 75 A.D.2d 84, 86, 428 N.Y.S.2d 99 (1980) (acknowledging the well-recognized legal principle- that, when a defendant, by a deception, has caused a plaintiff to delay suit on a known cause of action until the statute of limitations has run, the courts will apply the doctrine of estoppel to prevent an inequitable use of the statute as a defense); Krueger v. St. Joseph’s Hasp., 305 N.W.2d 18, 25 (N.D.1981) (finding estoppel could apply to wrongful death actions because it operates to preclude one guilty of wrongdoing from asserting the statute of limitations as a defense); First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp., 744 P.2d 1197, 1200-01 (Colo.1987) (recognizing the “long history at common *442 law of disapprobation of fraud” and holding wrongful death statute of limitations does not begin to run in face of fraudulent concealment, stating, “To hold otherwise would allow tortfeasors, by virtue of knowing and intentional fraudulent conduct, to defeat the basic purpose of the wrongful death statute — protecting the interests of those who, through no fault of their.own, must ‘bear the burden of such tragic events.’ ”); and Muller v. Thaut, 230 Neb. 244, 430 N.W.2d 884, 893 (1988) (citing several cases discussing the maxim that one may not assert the statute of limitations to take advantage of one’s own wrongdoing and concluding that fraudulent concealment, if proved by the plaintiff, es-tops the defendant from asserting the statute of limitations as a defense to plaintiffs wrongful death action).
Other jurisdictions applied the common law maxim regarding fraud vitiating any assertion of the statute of limitations in wrongful death actions, although without citation to Glus. See, e.g., Geisz v. Greater Baltimore Med. Ctr., 313 Md. 301, 545 A.2d 658, 668-69 (1988) (recognizing an “ancient maxim that no one should profit by his own conscious wrong is too deeply imbedded in the framework of our law to be set aside by legalistic distinction^]” between statutes of limitation, and concluding estoppel based on fraudulent concealment could forestall the wrongful death statute of limitations if pleaded and proven); DeCosse v. Armstrong Cork Co., 319 N.W.2d 45, 50-52 (Minn.1982) (acknowledging “a person should not be permitted to shield himself behind the statute of limitations where his own fraud has placed him. He should not be permitted to profit by his own wrong, and it would strike the moral sense strangely to permit him to do so.... Fraud is bad, it should not be permitted to go unchecked anywhere, and justice should always be able to penetrate its armor” and holding wrongful death actions are subject to tolling where a cause of action is concealed fraudulently); Cox v. Upjohn Co., 913 S.W.2d 225, 231 (Tex.App.1995) (explaining “fraud vitiates whatever it touches” and to permit a defendant to invoke the wrongful death statute of limitations after concealing his or her wrongdoing “would make the statute a means of encouraging rather than preventing fraud”); Baker v. Beech Aircraft Corp., 39 Cal.App.3d 315, 324, 114 CaLRptr. 171 (1974) (stating, “To hold that by concealing fraud, or by committing fraud in such a manner as to conceal it until after the party committing the fraud could plead the statute of limitations to protect itself, is to make the law which was designed to prevent fraud the means by which it is successful and secure.”); and Krevitz v. City of Philadelphia, 167 Pa.Cmwlth. 412, 648 A.2d 353, 357 (1994) (holding a defendant is estopped from invoking the bar of a statute of limitations “[w]here, ‘through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry*— ”).
Further, there are cases that specifically apply these common law maxims and equitable estoppel to prevent defendants who have committed murders from relying on the wrongful death statute of limitations as a defense when sued civilly. See Brook-shire v. Burkhart, 141 Okla. 1, 283 P. 571, 578 (1929) (finding fraudulent concealment was an implied exception to the wrongful death statute of limitations against murder, explaining a party who concealed material facts that prevented the discovery of the wrong or fact that cause of action accrued is not allowed to take advantage of that wrong by pleading the statute, the purpose of which is to prevent wrongdoing and fraud); Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 936 (4th Cir. 1991) (applying equitable estoppel due to fraudulent concealment to Virginia’s *443 wrongful death statute of limitations because to do otherwise would lead to unjust results, such as “enabling] a murderer to escape civil liability by concealing his identity or the nature of his crime until the expiration of the period of limitations.”); Friedland v. Gales, 131 N.C.App. 802, 509 S.E.2d 793, 798 (1998) (holding murderer’s intentional concealment of identity as perpetrator equitably estopped him from asserting statute of limitations as a defense to wrongful death action); and Bernoskie v. Zarinsky, 344 NJ.Super. 160,781 A.2d 52, 57 (App. Div. 2001) (applying equitable tolling to a plaintiffs wrongful death action filed forty years after decedent’s death, finding “a murderer who escapes detection and apprehension has no equitable claim to the repose from the threat of litigation that statutes of limitation are designed to provide”).[5]
Relator argues this Court must reject Irwin’s argument because this Court lacks the constitutional authority pursuant to the separation of powers provision contained in Missouri Constitution article II, section 1 to create an equitable estoppel exception to the wrongful death statute of limitations.[6] Relator cites cases wherein this Court held that statutes of limitations may only be suspended or tolled by specific enactments of the legislature, and the courts are not empowered to extend those exceptions. See, e.g., Sanders v. Ahmed, 364 S.W.3d 195, 205 (Mo. banc 2012) (holding only the legislature can place limits on the causes of actions it creates and to do “otherwise would be to tell the legislature it could not legislate”).
Relator does not address any of the cases Irwin cited from other jurisdictions, explaining that the common law maxim that one cannot benefit from his or her fraud is a notion that is older than the country itself. Missouri’s adoption of these common law maxims predates Gins. See Perry v. Strawbridge, 209 Mo. 621,108 5.W. 641, 642-43 (1908), (reiterating the basic principle that “[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are adopted by public policy, and have their foundation in universal law administered in all civilized countries.”) (quoting Box v. Lanier, 112 Tenn. 393,79 S.W. 1042,1045 (1904)). This Court *444 acknowledged these common law maxims were adopted expressly as Missouri law and later codified ■ by section 1.010, the common law reception statute.[7] Id. at 644. The Perry court considered, and ultimately rejected, the notion that these common law maxims were “either expressly or impliedly changed or modified” by statute or that the common' law either repealed, changed or modified them. Id.
Section 1.010' expressly provides that “all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof.” This comports with this Court’s instruction in O’Grady that the wrongful death act be construed so as “to perceive the import of major legislative innovations and to' interweave the new legislative policies with the inherited body of common law principles.” O’Grady, '654 S.W.2d at 908.
Relator argues certain statutory construction, principles preclude, this Court’s application of the common law maxims' and equitable estoppel to the wrongful death statute of limitations. Relator claims Missouri courts are prohibited from engrafting exceptions onto special statutes of limitations that would toll .the running thereof based on fraud, concealment, or any other conduct not stated explicitly in the statute, citing Frazee. However, tolling and accrual are distinct legal concepts from the application of fraudulent concealment as a form of equitable estop-pel, which forecloses a defendant from pleading the statute of limitations as a defense. The application of equitable es-toppel does nothing to engraft a tolling mechanism or otherwise extend the statute of limitations beyond what is stated expressly in the statute. The cause of action still accrues at the decedent’s death, and the statute of limitations begins to run at that time. Equitable estoppel does not toll the running of the statute. Rather, it forecloses the wrongdoer, who concealed his or her actions fraudulently, from asserting the defense. Therefore, this Court has not run afoul of its constitutional duties by reaching this holding.
This Court holds the application of common law maxims precluding one from benefitting from his or her own fraud and application of the doctrine of equitable es-toppel bars Relator from asserting the statute of limitations as a defense to Irwin’s cause of action. In so doing, this Court follows the dictates of O’Grady by interweaving legislative policies with the inherited body of common law principles so as to reach a remedial purpose ensuring that tortfeasors be held liable for the consequences of their actions and cannot benefit from their own fraud. This approach is supported by caselaw from many other jurisdictions, which' have addressed this precise issue. Relator’s interpretation of the wrongful death statute of limitations not only contravenes the purposes set forth in O’Grady, it seeks to reward fraud *445 ulent concealment, the destruction of evidence, and the very act of murder. This Court cannot fathom that the legislature’s intent when enacting the wrongful death statute of limitations was to permit tortfea-sors to evade liability for causing wrongful deaths so long as the tortfeasor could conceal their wrongdoing until the statute of limitations expired, while other torfeasors, guilty of the same conduct, except for the fortuity that it merely caused injury instead of death, would be held liable for damages. Such a reading of section 537.100 would lead to an absurd and illogical result.[8]
Conclusion
The circuit court did not abuse its discretion in overruling Relator’s motion to dismiss Irwin’s wrongful death suit because the doctrine of equitable estoppel forecloses Relator from relying on the statute of limitations as an affirmative defense due to his fraudulent concealment of his wrongdoing. The preliminary order in prohibition is quashed.[9]
Stith and Teitelman, JJ., and Gabbert, Sp. J., concur; Fischer, J., dissents in separate opinion filed; Russell, J., dissents in separate opinion filed; Fischer and Wilson, JJ., concur in opinion of Russell, J. Breckenridge, C. J., not participating.

. All statutory references are to RSMo 2000.

. Judge Russell's dissenting opinion finds Glus distinguishable because the dissent be-Heves there was nothing in the legislative history of the federal statute to indicate equitable *441 estoppel would not be applicable, and counsel made no compelling argument to the contrary. Judge’s Russell's dissenting opinion then states the legislative history of section 537.100 indicates the General Assembly’s intent to not include a fraudulent concealment exception. The dissenting opinion strongly adheres to the concept of legislative acquiescence or inaction to support its position. The dissenting opinion claims that because the legislature has not amended section 537.100 to include any fraudulent concealment exception after this Court’s decision in Frazee, the legislature’s inaction is conclusive no matter what factual or legal scenário is presented later. This Court has held that, while legislative inaction is “not conclusive of legislative approval, such inaction can be considered.” South Metro. Fire Prot. Dist. v. City of Lee’s Summit, 278 S.W.3d 659, 669 n.'11 (Mo. banc 2009). Further, this Court has cautioned, "it is speculative to infer legislative approval from legislative inaction.” Med. Shoppe Int’l, Inc. v. Dir. of Revenue, 156 S.W.3d 333, 334 (Mo. banc 2005).

. Judge Russell’s dissenting opinion cites Weiss as an example of this - Court’s judicial restraint in strictly construing a statute of limitations by deferring to the legislature’s pronouncement and rejecting an equitable es- ■ toppel argument. However, a close reading of Weiss demonstrates this Court analyzed the merits -of the plaintiff’s equitable estoppel argument. While this Court ultimately rejected the plaintiff’s estoppel claim, it was because . there was no showing the doctor acted affirmatively to induce the plaintiff to delay filing her lawsuit. Weiss, 975 S.W.2d at 121. Accordingly, it was the plaintiff’s failure to plead the proper elements of equitable estoppel that caused her claim to fail, -not this Court’s unwillingness to apply equitable estoppel to statutes of limitation.

. Judge Russell’s dissenting opinion criticizes the principal opinion for relying upon multiple cases from other jurisdictions, yet it relies upon a secondary source, Theodore Sedgwick, A Treatise on the Rules Which Govern the Interpretation and Construction of Statutory and Constitutional Law, 277 (Pomeroy, ed., 2d ed. 1874, reprint 2012), as “considerable historical precedent” for the proposition that courts have long rejected the creation of an equitable exception to the statute of limitations. Sedgwick’s generic musings about this topic may be informative. However, they are considerably less persuasive than Missouri’s sister states, that, under similar statutory frameworks, have seen fit to apply the longstanding doctrine of equitable estoppel to prevent a wrongdoer from benefiting from his or her own fraud, even" when their statutes do not contain an express exception.

. Mo. Const, art. II, sec. 1 states:
The powers of government shall be divided into three distinct departments — -the legislative, executive and judicial — each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

. Section 1.010 provides:
The common law of England and all statutes and acts of parliament made prior to the fourth year of the reign of James the First, of a general nature, which are not local to that kingdom and not repugnant to or inconsistent with the Constitution of the United States, the constitution of this state, or the statute lhws in force for the time being, are the rule of action and decision in this state, any custom or usage to the contrary notwithstanding,' but no act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in ■ conflict with, the [1] common law, or with such statutes or acts of parliament; but all • acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof.

. This Court recognizes the holding in this case differs from that in Boland v. Saint Luke’s Health Sys., Inc., 471 S.W.3d 703, 2015 WL 4926961 (No. SC93906) (Mo. banc 2015), handed down this same day. Boland is predicated upon a civil factual pattern wherein the defendants filed a motion to dismiss while Beisly is predicated upon a criminal factual pattern and seeks writ relief.

. It should be noted that this Court’s historical treatment of special judges' accords their votes the same weight as the regular members of this Court. See Rule 11.02 (providing, “A judge or commissioner so transferred, during the period designated, shall have the same powers and responsibilities as a judge of the court or district to which he [or she] is transferred”).

. The Southern District opinion in Beisly expressly recognized that it was in conflict with the Western District’s opinion in Boland. See attached Appendix A, pages 11-14.