KURT S. ODENWALD, Judge
Introduction
This Court addresses for the second time on appeal the rights and obligations of Charter Communications Operating, LLC ("Charter"), SATMAP Inc. ("SMI"), and The Resource Group International Limited ("Resource") under the terms of a Services Agreement (the "Agreement") and guarantee entered into among these parties. In particular, we are asked in this appeal to determine what money, if any, is owed to Charter as a reimbursement of Charter's prepayment to SMI for unused support services. Charter also challenges the circuit court's award of attorneys' fees to SMI and Resource. In the first lawsuit, the circuit court found that SMI did not breach the Agreement when it refused to reimburse the balance of the prepayment fee demanded by Charter, Charter appealed that judgment, which we affirmed.
Following the first appeal, Charter again sued SMI and Resource (collectively, "Respondents") for the balance of the prepayment fee paid by Charter to SMI under the Agreement. The circuit court again granted judgment in favor of Respondents, finding that because Charter had pursued its claims against Respondents in the prior litigation, the doctrine of res judicata precluded Charter from again litigating the various claims raised in its second petition. Charter now appeals.
Charter's second petition asserts the same causes of action against the same parties, and seeks the same remedy against Respondents as its first petition. Accordingly, res judicata precludes Charter from pursuing its various theories of recovery in the current action. Because neither SMI nor Resource engaged in any wrongdoing, Respondents are not equitably estopped from asserting res judicata as an affirmative defense in this action. Moreover, Missouri law does not support Charter's claim of unjust enrichment because the parties' relationship was governed by a valid and enforceable contract; unjust enrichment is available to parties only when a contractual relationship is lacking between them. Lastly, Charter's challenge to the award of attorneys' fees fails because Charter is not the prevailing party in this action. For these reasons, we affirm the circuit court's judgment.
Factual and Procedural History
I. The Agreement
A. Charter's Prepayment Obligation
On January 1, 2012, Charter, SMI, and Resource entered into the Agreement. The Agreement detailed an arrangement between Charter and SMI in which SMI agreed to provide a system of computer applications and technical support for Charter's call centers. The Agreement required Charter to make a substantial prepayment *499 of anticipated fees ("the Prepayment") to SMI. The Prepayment, detailed in Section 6(d)[1] of the Agreement, was intended to approximate Charter's first year of usage of the services provided by SMI, and was set at $3,600,000. Under Section 6(a) of the Agreement, SMI would deduct contractually authorized fees from the Prepayment as Charter incurred those fees.
Section 6(d) stated:
Prepayment. As a prepayment, [Charter] will provide to SMI the Prepayment of an aggregate of $3,600,000 as follows: (I) any then remaining balance of the Existing Prepayment on January 1, 2012, which SMI shall retain; plus (II) the difference between $3,600,000 and the Existing Prepayment to be paid by [Charter] to SMI on or before January 31, 2012 (the total of such Existing Prepayment plus new payments, the "Prepayment"). The Prepayment represents no more than twelve (12) months of expected revenues payable by [Charter] to SMI.... The Prepayment will automatically reduce each month by the Fees due to SMI from [Charter] in that month. If there is an Prepayment amount outstanding at the earliest of: (i) the termination of the Agreement; or (ii) the end of the Initial Term, SMI shall pay the balance of the Prepayment to [Charter] in cash within thirty (30) days of the termination date or the end of the Initial Term, as applicable.
B. Charter's Right to Terminate the Agreement
Section 7 of the Agreement presented Charter methods of terminating its rights and obligations under the Agreement. Section 7(a) permitted Charter to issue SMI a notice of non-renewal without any financial penalty prior to June 1, 2013. As a condition of exercising its non-renewal right, Charter was required to give "written notice to SMI of its intent not to renew at least thirty (30) days prior to the end of the Initial Term." The last day of the Initial Term was June 30, 2013.
Section 7(e) further allowed Charter to terminate the Agreement "for convenience" at any time after January 1, 2013. However, termination under this provision required Charter to pay SMI an early termination fee. Upon such termination, Section 7(e) required SMI to "promptly provide a refund to [Charter] of the remaining balance of the Prepayment at the time of the termination date less thirty-three and one-third percent (33-1/3%) of such remaining balance, which SMI may retain as an early termination fee."
C. Recovery of Attorneys' Fees
Section 15(j) of the Agreement included an attorneys' fees provision. Section 15(j) stated:
The Prevailing Party in any dispute arising under this Agreement including, without limitation a dispute relating to a late payment under Section 6(i), will be entitled to recover from the non-Prevailing Party all reasonable attorneys' fees and costs. "Prevailing Party" shall mean that Party whose obtained relief is closest to its requested relief.
D. Guarantee of Refund of Prepayment Balance
Resource guaranteed SMI's obligation to return promptly the remaining balance of the Prepayment to Charter. Charter, SMI, and Resource memorialized this unconditional guarantee with a Promissory Note ("Note") executed by Resource concurrently with the execution of the Agreement. The Note required Resource to pay Charter an amount equal to the remaining balance *500 of the Prepayment due and owing from SMI to Charter under the Agreement, together with any accrued and unpaid interest. Resource was obligated to make the payment within one day of demand by Charter, provided the demand was made thirty days after the earlier of either the termination of the Agreement or the end of the Initial Term. Resource expressly waived any requirement that Charter proceed against SMI before seeking payment from Resource. Resource also waived its right to all defenses except to contest what constitutes "payment in full."
II. Charter I-The First Suit
On June 3, 2013, Charter transmitted a termination letter to SMI ("the June 3 Notice"). In relevant part, the notice stated: "[Charter] hereby terminates the [Agreement] in accordance with Section 7 of the Agreement. ... [S]uch on time termination shall be effective upon the expiration date and full conclusion of the Initial Term, June 30, 2013, and as such, the Agreement shall not proceed into the First Renewal Term." The June 3 Notice instructed SMI to calculate the balance of the Prepayment and refund the balance to Charter pursuant to the Agreement.
SMI calculated the refund balance of the Prepayment. After deducting all usage fees incurred by Charter and the early termination fee imposed under Sections 7(e) and (f), SMI calculated $1,559,953 as the balance of the Prepayment to be returned to Charter under the Agreement. On July 31, 2013, SMI tendered payment to Charter in the amount of $1,559,953. Charter rejected SMI's tender. SMI again notified Charter of its intent to transfer the Prepayment refund balance on August 1, 2013. Charter again rejected SMI's tender, claiming that it was owed the full amount of the remaining Prepayment balance under the terms of the Agreement without any deduction for a termination fee-$2,339,928.
Charter sued Respondents for breach of contract, demanding payment of $2,339,928-"the full remaining balance of the Prepayment." Charter averred that SMI's retention of the early termination fee from the Prepayment balance breached the repayment provisions of the Agreement. Respondents denied Charter's claims and filed two counterclaims against Charter. Respondent's first counterclaim sought a declaratory judgment that SMI properly retained the early termination fee of $779,975 plus interest from the Prepayment under Section 7(e). In the second counterclaim, Respondents sought an award of attorneys' fees and costs pursuant to the fee-shifting provision in Section 15(j). The parties filed cross-motions for judgment on the pleadings. The circuit court entered an interlocutory judgment on the merits in favor of Respondents on all claims and counterclaims raised by the parties. The interlocutory judgment instructed Respondents, as the prevailing parties under the Agreement, to file an application for attorneys' fees. Respondents filed a claim pursuant to Section 15(j) and requested $37,304 in attorneys' fees.
The circuit court then entered its final judgment in favor of Respondents on all claims and counterclaims and awarded Respondents attorneys' fees. Specifically, the circuit court found that the June 3 Notice "constituted a termination for convenience under Section 7(e)." The circuit court noted that "Section 7(e) sets forth only two criteria for a termination for convenience: (1) the termination must occur at least 'twelve (12) months after the Effective Date,' i.e. on or after January 1, 2013; and (2) the termination must 'provid[e] notice to SMI.' " The circuit court found that the June 3 Notice satisfied both criteria for *501 termination for convenience. Further, the circuit court determined that the June 3 Notice was not a notice for non-renewal under Section 7(a) that would eliminate the imposition of the termination fee because the June 3 Notice was not timely. Section 7(a) required Charter to give SMI written notice of its intent not to renew at least thirty days prior to the end of the Initial Term, which Charter did not do.
The circuit court further found that "[o]n July 31, 2013, and August 1, 2013, Charter declined to accept SMI's timely tender of $1,559,953, which was the amount of the Prepayment that was actually due and owing to Charter under the Services Agreement. Accordingly, Charter is not entitled to an award of interest on that sum."
The circuit court's judgment did not address whether Respondents breached any obligations with respect to the remaining balance of the Prepayment, but found that:
(1) SMI is not obligated to refund to Charter the early termination fee of $779,975 plus interest, under Section 7(e) of the Services Agreement;
(2) Resource is not obligated to make any payment to Charter under the Promissory Note because Charter has not issued a written demand;
(3) Resource is not obligated under the Promissory Note to make any payment exceeding SMI's obligation of repayment under the Services Agreement;
(4) Charter is not entitled to any interest on the $1,559,953 that Charter declined to accept upon timely tender by SMI; and
(5) Charter must pay all reasonable costs and attorneys' fees incurred by SMI and Resource in the litigation of this action, ... in the sum of $37,304.00.
Charter did not seek any clarification, modification or amendment of the judgment as allowed under Rule 75.01,[2] and instead filed an appeal from the circuit court's judgment. Charter first challenged the circuit court's finding that the June 3 Notice was a termination for convenience under Section 7(a). Charter next alleged that Sections 2(d) and 6(d) of the Agreement unambiguously required SMI to return the entire remaining balance of the Prepayment after deducting fees for usage, regardless of whether the Agreement was terminated or renewed. Charter further asserted that it properly demanded repayment from Resource, and that the circuit court erred in granting judgment in favor of Respondents on their counterclaims.
We affirmed in a per curiam order. Charter Commc'ns Operating, LLC v. SATMAP Inc., 466 S.W.3d 721, 721 (Mo. App, E.D. 2015) (" Charter I"). Relevant to this appeal, we noted in Charter I:
Both Section 2(d) and Section 6(d) expressly contemplated that SMI would deduct all contractually authorized fees before refunding the remainder of the Prepayment to Charter. Section 2(d) provided that "[Charter] may cease using the SATMAP service in all Queues at any time during the Initial Term without penalty or liability to SMI and within thirty (30) days of the expiration of the Initial Term, SMI will remit to [Charter] the remaining amount of the Prepayment in cash." Similarly, Section 6(d) provided: "If there is an [sic] Prepayment amount outstanding at the earliest of: (i) the termination of the Agreement; or (ii) the end of the Intial Term, SMI shall pay the balance of the Prepayment *502 to [charter] in cash...." As such, both Section 2(d) and 6(d) authorized the deduction of the early termination fee and any other fees, as well as usage fees, before refunding the Prepayment.
In the per curiam proceeding, we noted that the balance of the Prepayment owed to Charter by SMI was $1,559,953, not the $2,339,928 demanded by Charter. We further determined that Resource had no payment obligation to Charter beyond SMI's obligation, which SMI satisfied when it tendered payment in full to Charter:
Here, because "a guarantor is not liable under a contract if the principal is not liable," Resource's obligation to pay Charter, as guarantor, applies only to amounts due from SMI to Charter under the Agreement. Grand Inv. Corp. v. Connaughton, Boyd & Kenter, P.C., 119 S.W.3d 101, 115 (Mo. App. W.D. 2003). Additionally, because Charter issued a termination for convenience, SMI was entitled to deduct the one-third early termination fee under Section 7(e) prior to refunding the remainder of the Prepayment to Charter. As a result, at the termination for convenience, SMI owed Charter a refund of $1,559,953, not the $2,339,928 that Charter demanded.
...
[B]ecause SMI and Resource fulfilled all repayment obligations under the Agreement when SMI tendered payment to Charter of the full amount due of the balance of the Prepayment, it thereby terminated any collateral provisions in the Note, including any waiver of claims by Resource.
In denying Charter's points on appeal, we expressly held that the circuit court properly entered judgment in favor of SMI and Resource on Count I of Charter's petition and Counts I and II of Respondents' counterclaims. Charter did not seek a rehearing or transfer from this Court's order affirming the circuit court's judgment.
III. Charter II-The Current Litigation
After the conclusion of Charter I, Charter sent a notice to Respondents demanding payment of $1,559,953 under the terms of the Agreement. In this notice, Charter alleged that the balance of the Prepayment due to Charter upon its termination of the Agreement was $1,559,953. Respondents refused to pay Charter's demand.
Charter then filed its current petition in circuit court alleging both breach of contract and equitable claims against Respondents based upon their refusal to pay Charter the $1,559,953 remaining balance of the Prepayment. Charter averred that Respondents did not dispute, either before or during the prior lawsuit, Charter's entitlement to a refund of $1,599,953 from the Prepayment under the Agreement. Respondents maintained that the principles of res judicata and collateral estoppel barred Charter from seeking a return of any balance of the Prepayment in the current lawsuit because Charter's claims had been litigated previously. Charter countered that res judicata was inapplicable because Charter's second petition asserted new claims that neither sought the same relief, nor were based on the same ultimate facts as the dispute at issue in Charter I. Specifically, Charter argued that Charter I addressed only SMI's obligation to return the $779,975 withheld as an early termination fee. That claim, Charter contends, differs from the issue presented in the second petition Charter filed, which addresses SMI's obligation to return the $1,559,953 usage balance that Respondents refused to pay after the Charter I judgment.
*503 The circuit court in Charter II interpreted the conclusions of law rendered in Charter I as follows:
SMI (and accordingly, Resource) were not obligated to pay anything to Charter-not the $2,339,928 sought by Charter, not even the $1,559,953 (which is the remaining amount after deducting the early termination fee of $779,975). Charter was not entitled to the $1,559,953, because it did not abide by the terms of the parties' contract; as the trial court had found, Charter had not issued a written demand.
(emphasis added). Even though Charter later sent notice to Respondents demanding payment of the $1,559,953, the Charter II circuit court found that the new claim for return of the Prepayment balance was barred by res judicata because:
Charter's claims seeking recovery of the $1,559,953 balance of the prepayment is a "point properly belonging to the subject matter" of Charter I and arises out [of] the same transaction involving the $779,975 termination fee. Namely, both sums were a part of the same prepayment under the same [Agreement]. Moreover, a party exercising reasonable diligence would have made a claim for the full amount of the prepayment balance owed. As a result, even if Charter did not seek the $1,559,953 in Charter I-which it did in its Petition-its present claims would still be barred by res judicata.
(internal citations omitted).
The circuit court further determined that Charter's claims of unjust enrichment and equitable estoppel were foreclosed by the application of res judicata. The circuit court specifically rejected Charter's characterization of its demand for reimbursement of the Prepayment balance after Charter I as a "new ultimate fact" that would allow litigation of its claim. In so doing, the circuit court found that "[a]ll of the events that gave rise to Charter's claims (which all sought the balance of the prepayment under the [Agreement] ) occurred before Charter I."
Finally, the circuit court awarded Respondents' reasonable costs and attorneys' fees and denied Charter's request for attorneys' fees.
Charter now appeals.
Points on Appeal
Charter raises seven points on appeal, each charging the circuit court with error for denying judgment on the pleadings to Charter and granting judgment on the pleadings in favor of Respondents. Charter's first three points challenge the circuit court's application of res judicata as a bar to its claims. In Point Four, Charter maintains the circuit court erred in granting judgment in favor of Respondents because Charter sufficiently pleaded and established that SMI breached the Agreement or, alternatively, was unjustly enriched by failing to return the Prepayment balance of $1,559,953 to Charter. Similarly, Charter asserts in Point Five that its pleadings adequately allege and prove that Resource breached the Agreement and Note when Resource refused to pay Charter the Prepayment balance of $1,559,953 following Charter's written demand. Charter's final points on appeal allege error in the circuit court's award of reasonable attorneys' fees to Respondents.
Standard of Review
We review a court's grant of judgment on the pleadings de novo. Barrett v. Greitens, 542 S.W.3d 370, 375 (Mo. App. W. D, 2017). In reviewing the grant of a motion for judgment on the pleadings, this Court must decide whether the moving party is entitled to judgment as a *504 matter of law based upon its pleadings. Emerson Elec. Co. v. Marsh & McLennan Cos., 362 S.W.3d 7, 12 (Mo. banc 2012). In making this determination, we look solely at the face of the pleadings. Id."The well-pleaded facts of the non-moving party's pleading are treated as admitted for the purposes of the motion." Id.
Discussion
Because Points One and Two focus on the circuit court's application of res judicata, we address these points together. In both Points Four and Five, Charter addresses SMI's and Resource's nonperformance of the Agreement and Note as alleged and proven by the pleadings. Because we conclude that Charter's current breach-of-contract claims are the same claims raised in Charter I we consider Points Four and Five within the context of our res judicata analysis. However, within Point Four, Charter also challenges the circuit court's judgment relating to its alternate, equitable claim for unjust-enrichment. We then consider the equitable claims raised in Charter's Point Three and address the unjust-enrichment sub-point from Point Four. Lastly, we jointly address the issues of attorneys' fees raised by Charter in Points Six and Seven.
I. Res Judicata (Points One, Two, Four, and Five)
As a well-established doctrine in Missouri, res judicata bars the reassertion of a cause of action previously adjudicated in a proceeding between the same parties or those in privity with them. Lauber-Clayton, LLC v. Novus Props. Co., 407 S.W.3d 612, 618 (Mo. App. E.D. 2013) (citing Am. Polled Hereford Ass'n v. City of Kansas City, 626 S.W.2d 237, 241 (Mo. banc 1982) ; Jordan v. Kansas City, 929 S.W.2d 882, 885 (Mo. App. W.D. 1996) ). The doctrine of res judicata "is designed to prevent a multiplicity of lawsuits," Id. (internal citations omitted).
Res judicata, a Latin phrase meaning "a thing adjudicated", prohibits a party from bringing a previously litigated claim. The modern term is "claim preclusion." Claim preclusion also precludes a litigant from bringing, in a subsequent lawsuit, claims that should have been brought in the first suit. As such, the doctrine applies to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time.
Kesterson v. State Farm Fire & Cas. Co., 242 S.W.3d 712, 715-16 (Mo. banc 2008) (emphasis in original) (internal citations omitted).
It is important to note that res judicata does not preclude all subsequent claims that may arise from the same contract or transaction. See. e.g., Finley v. St. John's Mercy Med. Ctr., 958 S.W.2d 593, 595 (Mo. App. E.D. 1998) ("A plaintiff is not barred from bringing two successive claims on the same contract where the second action had not accrued at the time the first was prosecuted."). Parties may pursue claims that are genuinely "separate" from claims previously litigated between the parties despite the prior litigation. See. e.g., id. at 595-96 (permitting the appellant to file a second suit because the first suit only established a right to recover for disability payments due at the time of the first suit; the second suit established a right to recover following the first suit until the second filing date). Importantly, "[i]n order for a subsequent claim on the same transaction to be considered separate, ... there must be new ultimate facts, as opposed to evidentiary details, that form a new claim for relief." Kesterson, 242 S.W.3d at 716. Our challenge in this appeal is to determine if Charter has *505 raised separate claims in Charter II, despite the similar origin and nature of the claims to those litigated between Charter and Respondents in Charter I.
Missouri courts adhere to the following analysis to determine the applicability of res judicata to a proceeding:
For res judicata to adhere, four identities must occur: (1) identity of the things sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the action; and (4) identity of the quality or status of the person for or against whom the claim is made. When these four identities concur, res judicata operates to bar any claim that was previously litigated between the same parties or those in privity with them.
Lauber-Clayton, 407 S.W.3d at 618 (internal quotations omitted). "So long as the underlying facts are the same, res judicata bars re-litigation of the matter whether upon the same or different cause of action, claim, demand, ground or theory." Roy v. MBW Constr., Inc., 489 S.W.3d 299, 305 (Mo. App. W.D. 2016) (internal quotations omitted).
Charter makes an impassioned and sympathetic argument that the limited parameters of the early termination fee litigated in Charter I does not forfeit its recovery of the Prepayment balance based on Charter's usage. On the surface, Charter's position seems plausible. However, upon a more in-depth review of the principles of res judicata, as applied to the facts of this case, we are not persuaded that the circuit court erroneously applied res judicata in rendering judgment for Respondents. A careful and thorough review of the record suggests that res judicata bars Charter from litigating its claims seeking payment of the Prepayment balance in Charter II. As discussed below, the record before us demonstrates that the identity of things sued for, the identity of the cause of action, the identity of the persons or parties to the action, and the identity of the quality or status of the persons for or against whom the claim is made, are the same in Charter I and Charter II.
A. The Four Identities of Lauber-Clayton
As stated above, we require the simultaneous presence of four identities between two successive claims to invoke the claim preclusion principle of res judicata. Lauber-Clayton, 407 S.W.3d at 618, We discuss the Lauber-Clayton factors out of order to first note those factors not disputed by the parties.
1. Identity of Parties and Identity of the Quality or Status of Persons Against Whom the Claim is Made.
Charter contests neither the identity of the parties, nor the identity of the quality or status of the persons for or against whom the claim is made in both Charter I and Charter II. The sameness of these identities is evident from the record as Charter, SMI, and Resource are the only parties to both actions. The third and fourth factor requirements of Lauber-Clayton are unquestionably satisfied.
2. Factors One and Two of Lauber-Clayton: Comparing Facts Between Charter I and Charter II.
To lay a foundation for our analysis of the remaining two identities of res judicata analysis, we compare the facts averred in the petitions of Charter I and Charter II.
Charter I involved the following facts: Charter alleged it had properly terminated the Agreement according to Section 7(a) and sought the return of $2,339,928 from the Prepayment. Charter contended that it was entitled to the return of the "early termination fee" withheld by SMI. SMI countered that Charter terminated the *506 Agreement under Section 7(e), which authorized SMI to withhold lawfully the $779,975 as an early termination fee. No party disputed in their pleadings Charter's entitlement to a return of $1,559,953 from the Prepayment based on Charter's usage of services provided under the Agreement. No party raised the issue of Charter's entitlement to $1,559,953 on appeal following the circuit court's entry of judgment in Charter I. No party raised this issue or sought to clarify Charter's entitlement to this amount in any motion to modify or amend the judgment under Rule 75.01. Thus, our order in Charter I did not address the amount of any Prepayment balance owed to Charter; we merely affirmed the circuit court's judgment that SMI properly retained the $779,975 early termination fee and Charter was not entitled to a full repayment of $2,339,928.
Charter suggests that its petition in Charter II presented new facts occurring after Charter I, which distinguished its claims in Charter II from the claims previously asserted in Charter I. Specifically, Charter reasons that under the general rule:
The estoppel of a judgment extends only to facts in issue as they existed at the time the judgment was rendered, and does not prevent a reexamination of the same questions between the same parties where in the interval the facts have changed or new facts have occurred which may alter the legal rights or relations of the litigants.
City of Hardin v. Norborne Land Drainage Dist., 360 Mo. 1112, 232 S.W.2d 921, 925 (Mo. banc 1950) ; see also Kesterson, 242 S.W.3d at 716. While acknowledging this well-established principle, we likewise cautiously observe that, "[t]he mere change of facts subsequent to the rendition of a judgment does not necessarily affect the operation of such judgment under the doctrine of res judicata." City of Hardin, 232 S.W.2d at 925.
Following Charter I, SMI did not refund any balance of the Prepayment to Charter. Charter again seeks the return of the Prepayment balance. Charter presents the same legal controversy in Charter II, only the amount of the balance has changed between the two petitions. Charter contends that the different amounts sought as the Prepayment balance differentiates the ultimate facts of the current petition from Charter I, and thus precludes the application of res judicata. We disagree.
A comparison of Charter's two petitions reveal the following: Charter's claims in both Charter I and Charter II require evidence of the Agreement, the Prepayment, and the balance to be refunded to Charter from the Prepayment. Specifically, evidence of Section 7(a), Section 7(e), the Prepayment calculation, and the early termination fee amount are critical to both claims. The ultimate facts in both claims are identical, i.e., the Prepayment balance due Charter. Cf. id. We find unavailing Charter's position that the difference in the amount Charter sought as the balance to be refunded from the Prepayment in its two petitions creates a claim that is separate and distinct from the claim litigated by Charter and Respondents in Charter I. Charter's current claim against Respondents undeniably arises from the same transaction as litigated in Charter I. The breach of contract and associated equitable claims asserted in Charter I and Charter II originate from the same contract-even the same subsection of the contract-between Charter, SMI, and Resource. Finding that the facts in Charter I are identical to Charter II. we proceed to consider the next Lauber-Clayton factor: "identity of the things sued for."
*507 3. Identity of the Things Sued For
The identity of the relief sought by Charter is simple and straightforward. In both Charter I and Charter II, Charter sued to recover the balance of the Prepayment from Respondents. But Charter reasons that the early termination fee was the sole focus of its claim in Charter I, and SMI's retention of that fee is a separate and distinct obligation from the balance of the Prepayment to which Charter is entitled due to its usage under the Agreement. In support of its position, Charter emphasizes that SMI's obligations to Charter arise from different clauses in the Agreement. We recognize that the amount of the Prepayment balance sought by Charter in the two petitions differ. Yet, we cannot ignore the fact that Charter's claim in both suits stem from a single prepayment made by Charter under the Agreement, and Respondents' singular liability to refund the balance of the Prepayment. As Charter characterized its claim in Charter I, "[t]his is a straightforward dispute. Charter seeks the return of $2,339,928 that it paid to [SMI] as a prepayment for services." We agree with Charter's succinct and accurate statement of the claim it presented in Charter I. In its pleadings filed in Charter I, SMI challenged the averments of Charter's petition by detailing the amounts comprising Charter's usage, and calculating the refund due Charter from the Prepayment. Charter nevertheless remained firm in its claim that it was entitled to receive a refund of $2,339,928, and neither amended its pleadings nor offered any alternative prayer for relief. To the contrary, Charter averred throughout its pleading that it was entitled to the "full balance of the remaining Prepayment" and stated that amount to be $2,339,928. Charter framed the issues in its pleading, in this all or nothing posture, and in so doing, invited the seemingly unfair result from which it now seeks relief.
The record shows that Charter sought to recover a singular Prepayment balance of $2,339,928. Charter's petition did not distinguish between a refund disallowing a deduction for the early termination fee and a refund based solely upon its usage of SMI's services during the term of the Agreement. We recognize that the circuit court's judgment in Charter I related only to the early termination fee and did not address Charter's entitlement to the $1,559,953. Similarly, because it was constrained by the scope of the circuit court's judgment, this Court limited its order in Charter I to affirming the circuit court's judgment in the pleading-no more and no less. The circuit court simply held that it found in favor of Respondents on Charter's claim for the full balance of the remaining Prepayment. Charter now seeks to sue Respondents again for the same thing-the full balance of the remaining Prepayment. We find that the identity of things sued for in Charter I is the same as Charter II.
4. Identity of the Cause of Action
We next must determine whether Charter I and Charter II present the same causes of action. In both Charter I and here, Charter presents different legal bases for its claims against the individual Respondents. Accordingly, we separate our analysis below.
a. Causes of Action Against SMI
Charter contends that Charter II asserts a new and separate cause of action against SMI based upon SMI's refusal to refund $1,559,953 to Charter after judgment was entered in Charter I. Notably, Charter's "new cause of action" pleads the same subsection of the Agreement in its claims against the exact same party. Charter did not plead a new contract or new *508 debt entered into with SMI. Our review of the current petition shows that the parties would re-litigate the same breach of contract issues presented in Charter I. The current petition requires the same analysis proposed and discussed in Charter I. The only difference between the petitions is Charter's prayer for a different amount of the refund Respondents are obligated to pay as the balance of the Prepayment. Missouri law does not permit Charter to re-litigate the same principles of law, under the identical contract provisions as it did against the same party in a prior lawsuit. See Kesterson, 242 S.W.3d at 716. The cause of action alleged by Charter against SMI is the same in Charter I and Charter II.
b. Causes of Action Against Resource
Charter posits that res judicata does not bar its breach-of-contract claim against Resource because that claim stems from Resource's failure to meet its obligation under its guarantee after Charter made proper written demand on Resource following the entry of judgment in Charter I. Charter argues that its present cause of action against Resource accrued at the earliest on October 3, 2014, after Charter issued a written demand to Resource on October 1, 2014 as required by Section 6(e) of the Agreement.
As Charter is aware, Resource is not the primary obligor, but simply a guarantor under the Agreement. Importantly, "a guarantor is not liable under a contract if the principal is not liable." Grand Inv. Corp. v. Connaughton, Boyd & Kenter, P.C., 119 S.W.3d 101, 115 (Mo. App. W.D. 2003). Charter premises its breach-of-contract claim against Resource on Resource's failure to honor its written demand for payment dated October 3, 2014. The glaring deficiency of Charter's argument is our holding in Charter I. In Charter I, we determined that "SMI and Resource fulfilled all repayment obligations under the Agreement when SMI tendered payment to Charter of the full amount due of the balance of the Prepayment." As of October 2014, the circuit court found that Resource fulfilled its contractual obligations to Charter. Resource's refusal to accede to Charter's demand for payment after judgment had been entered in Charter I could not constitute a breach of the Agreement because a judgment already found Resource had no obligation to pay Charter under the Note or Agreement. Charter cannot resurrect its claim on the Note by simply making a subsequent demand. Resource's obligation under the Note already had been discharged. As a result, Charter's claims against Resource for failing to honor its payment obligations under the Note are identical in both Charter I and Charter II. The timing of Charter's subsequent demand is inconsequential to this factor. The causes of action alleged against Resource in Charter I and Charter II are identical.
B. Charter's Claims in Charter II are Barred by Res Judicata
Our analysis of the res judicata factors discussed in Lauber-Clayton. supports the circuit court's finding that res judicata operates to bar all of Charter's claims in Charter II. See Lauber-Clayton, 407 S.W.3d at 618. Points One and Two are denied.
Charter uses Points Four and Five to reframe its res judicata argument by alleging the circuit court erred in finding against its breach-of-contract claims. Specifically, Charter maintains that the circuit court in Charter II erred in finding that Charter's pleadings failed to support its claim that Respondents independently breached the Agreement following Charter I by refusing to return the Prepayment balance of $1,559,953. Our resolution of *509 Points Four and Five is guided by our res judicata analysis set forth above. Charter did not acquire a separate, new, and independent right to sue either SMI or Resource under the Agreement after the circuit court entered judgment in Charter I. As previously discussed, Charter's current claims against Respondents arise from the same transaction as Charter I and accrued prior to Charter I. Moreover, because all four res judicata identities are present here, Charter is barred from re-litigating its breach-of-contract claims against both Respondents.
The breach-of-contract claims raised in Point Four and Point Five are denied.
II. Point Three-Equitable Estoppel
In Point Three on appeal. Charter raises an equitable challenge to the circuit court's judgment. In particular, Charter reasons that Respondents are equitably estopped from asserting res judicata as an affirmative defense in Charter II. Charter argues that it did not seek an alternative and separate recovery of the $1,559,953 balance in Charter I because Charter reasonably relied on SMT's tender and affirmative statements that SMI would refund the $1,559,953 at the conclusion of Charter I.
The doctrine of equitable estoppel seeks to foreclose one from denying his own expressed or implied admissions which have in good faith and in pursuance of its purpose been accepted and relied upon by another. There are three elements essential to a claim of equitable estoppel: first, there must be an admission, statement, or act by the person to be estopped that is inconsistent with the claim that is later asserted and sued upon; second, there must be action taken by a second party on the faith of such admission, statement, or act; and third, an injury must result to the second party if the first party is permitted to contradict or repudiate his admission, statement, or act.
Lake St. Louis Cmty. Ass'n v. Ravenwood Props., Ltd., 746 S.W.2d 642, 646 (Mo. App. E.D. 1988) (internal citations omitted); see also JGJ Props., LLC v. City of Ellisville, 303 S.W.3d 642, 651 (Mo. App. E.D. 2010). "Liberal application of the doctrine of equitable estoppel is not favored." Lake St. Louis Cmty. Ass'n, 746 S.W.2d at 646. "Rather, our courts restrict its use to only those cases in which each element clearly appears, with the burden resting on the party asserting estoppel to establish the essential facts by clear and satisfactory evidence." Id.
Charter postures its reliance on a letter sent to Charter by SMI before Charter filed Charter I. In that letter, SMI confirmed its obligation to pay Charter a Prepayment balance of $1,559,953. Charter contends that the only amount at issue in Charter I was the early termination fee and Charter's entitlement to the remaining $1,559,953 was not questioned until after the entry of judgment in Charter I.
Equitable estoppel is "[a] basic common law maxim, deeply rooted in this country's jurisprudence and older than the country itself." State ex rel. Beisly v. Perigo, 469 S.W.3d 434, 440 (Mo. banc 2015). The principle of equitable estoppel is well understood to mean that "no person shall take advantage of or benefit from his or her wrong." Id. (citing Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 232, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) ). Stated another way:
[W]here one party has by his representation or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of the advantage *510 .... [T]he general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.
Id. (quoting Glus, 359 U.S. at 234, 79 S.Ct. 760 ).
The record before us does not suggest that Respondents attempted to take advantage of Charter or benefit from any wrongdoings. SMI twice tendered the monies it believed were due and payable to Charter under the Agreement. Charter twice rejected SMI's lawful, valid and timely tender of payment of the balance due. Charter instead intentionally pursued a litigation strategy seeking payment of $2,339,928, an amount to which it was not entitled. When Charter rejected SMI's tender and sued for "the full balance of the Prepayment" in an amount of $2,339,928, it abandoned its right to later sue Respondents for the same relief under the same alleged breach of contract following the entry of judgment in Charter I. Furthermore, Charter had the opportunity to ask the circuit court to modify the judgment and clarify the Prepayment balance owed to Charter under Rule 75.01. Charter did not seek any modification or other clarification of the judgment. Perhaps realizing the consequences of its decision, Charter belatedly sought to address the issue of the $1,559,953 by filing a motion with our Court while the appeal in Charter I was pending. In its motion, Charter asked this Court to enter an order directing the payment of the Prepayment balance of $1,559,953 to Charter. However, when Charter filed its motion, the circuit court had lost jurisdiction over the matter, and we were constrained on appeal to rule on the judgment as entered by the circuit court. The motion was denied.
In essence, Charter chose to roll the dice and go for broke against SMI. It lost the gamble. By definition, one party's loss will translate into another party's gain. While seemingly unfair, Charter chose the path that later limited its legal options against SMI. By its actions, Charter similarly relinquished its right to enforce a guarantee of that payment from Resource under the Note. Neither SMI nor Resource took any wrongful action upon which Charter relied when pursuing its litigation strategy to reject SMI's tender and sue for $2,339,928. Charter alone is responsible for its actions. The only actions taken by Respondents in Charter I were to rightfully reject Charter's demand of $2,239,928.
As a result, equitable estoppel cannot apply because Respondents are not benefitting from their own wrongdoing. See Glus, 359 U.S. at 234, 79 S.Ct. 760 ; Beisly, 469 S.W.3d at 440. Whatever benefits may accrue to Respondents result solely and directly from Charter's litigation strategy to demand payment of $2,339,928 in Charter I, and to not seek alternative relief of $1,559,953. That decision was made by Charter, not Respondents. Point Three is denied.
III. Unjust Enrichment (Point Four)
Charter next argues that the circuit court erred in its judgment on the cross-pleadings because the pleadings establish, at a minimum, that SMI was unjustly enriched. By denying Charter its recovery of the $1,559,953 attributable to services not used by Charter under the Agreement, Charter correctly argues that it has paid for services that SMI did not render. Unfortunately for Charter, our analysis cannot end there.
"Unjust enrichment requires a showing that: '(1) [the plaintiff] conferred a benefit on the defendant; (2) the defendant *511 appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." ' Hargis v. JLB Corp., 357 S.W.3d 574, 586 (Mo. banc 2011) (quoting Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010) ).
It is undisputed that Charter made a $3,600,000 Prepayment to SMI at the beginning of the Agreement. The Agreement authorized SMI to withdraw money from the Prepayment amount only when SMI conducted services for Charter. Charter argues that even though the judgment in Charter I allowed SMI to retain the early termination fee under Section 7(e) of the Agreement, SMT's obligations under Section 6(d) remained enforceable, and obligated SMI to pay the balance of the Prepayment to Charter within thirty days of the termination of the Agreement. Despite the judgment in Charter I, Charter avers that SMI remained liable to Charter for the remaining portion of the refundable Prepayment, $1,559,953. Charter characterizes SMI's retention of the $1,559,953 as unjust because SMI previously conceded that it owed Charter the $1,559,953-a concession evidenced by SMI's tender of that amount. SMI counters that it fulfilled its obligations under the Agreement by tendering payment of the amount owed to Charter prior to the filing of Charter I and as a result, it no longer has any outstanding obligations under the Agreement.
As we previously opined, an initial review of this dispute suggests an unfairness to Charter should it be denied recovery of the amount SMI previously acknowledged as its contractual obligation. But the equitable principles which guide our application of unjust enrichment, in light of the particular facts before us, foreclose any ruling favorable to Charter, as unfair as that result may appear. Importantly, we are guided by the unmistakable and clear dictate of Missouri law that a party cannot recover damages under the equitable theory of unjust enrichment where an express contract governed the issue in dispute between the parties. See Lowe v. Hill, 430 S.W.3d 346, 349 (Mo. App. W.D. 2014). Specifically, a party "cannot recover under an equitable theory when [it] has entered into an express contract for the very subject matter for which [it] seeks to recover." Id. (internal citation omitted). Further, "[c]laims for money had and received and unjust enrichment are both founded upon equitable principles whereby the law implies a contract to prevent unjust enrichment." Id. (citing Karpierz v. Easley, 68 S.W.3d 565, 570 (Mo. App. W.D. 2002) ; Pitman v. City of Columbia, 309 S.W.3d 395, 402 (Mo. App. W.D. 2010) ). "It is a well-settled principle of law that implied contract claims arise only where there is no express contract ." Id. (emphasis added).
Charter does not dispute the long-accepted principle of law that the existence of an express contract bars recovery under an implied contract theory. Nor does Charter suggest that the Agreement was never created, or that it somehow was rendered invalid. Rather, Charter asserts that:
Allowing SMI to retain the benefit of the $1,559,953 under these circumstances is inequitable and would result in an enormous windfall to SMI. It would also improperly penalize Charter for exercising its right to contest SMI's interpretation of the [Agreement], and relying on [Respondents'] multiple tenders and affirmative representations in Charter I.
Despite the seeming fairness of Charter's argument, the fundamental precepts of unjust enrichment preclude our reversal of the circuit court's judgment. See id. As recognized by all parties, the terms of the Agreement expressly guide the parties and *512 dictate their obligation in these circumstances. Because express contract terms govern the issue in dispute, the terms of the contracts apply and unjust enrichment is not applicable as a matter of law. See id.
Charter is a communications company that entered into a multi-million dollar contract with Respondents. Charter is a sophisticated business entity. See Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc., 59 S.W.3d 505, 509 (Mo. banc 2001) ("Courts enforce the objective terms of contracts between sophisticated businesses, without regard to the parties' subjective intent."). We are not at liberty to award Charter equitable remedies relating to Respondents' obligations for refunding any amount of the Prepayment as that obligation is clearly set forth in Section 7 of the Agreement. Steelhead Townhomes, L.L.C. v. Clearwater 2008 Note Program, LLC, 537 S.W.3d 855, 860 (Mo. App. W.D. 2017) ("[I]f the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract.") Point Four is denied.
IV. Attorneys' Fees (Points Six and Seven)
Charter's final points on appeal relate solely to the circuit court's award of attorneys' fees to Respondents. These points are akin to Paganini's "Variations on a Theme by Rossini"-they present the same substance-but in a slightly different manner. Charter first reasons that Respondents are not entitled to an award of all attorneys' fees and costs under Section 15(j) of the Agreement because Respondents are not the prevailing party in the litigation. Point Seven maintains that Charter is entitled to an award of all reasonable attorneys' fees and costs under Section 15(j) of the Agreement because the circuit court should have entered judgment in favor of Charter, and therefore Charter is the prevailing party.
We review the circuit court's award of attorneys' fees for an abuse of discretion. Berry v. Volkswagen Grp. of Am., Inc., 397 S.W.3d 425, 430 (Mo. banc 2013). "To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." Id. at 431. In assessing the reasonableness of fees, "[o]ne consideration in determining the amount of attorneys' fees is the result achieved." Id. In addition, other relevant factors include:
(1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; (2) the number of hours reasonably expended on the litigation; (3) the nature and character of the services rendered; (4) the degree of professional ability required; (5) the nature and importance of the subject matter; (6) the amount involved or the result obtained; and (7) the vigor of the opposition.
Id.
The Agreement plainly provides that "[t]he Prevailing Party in any dispute arising under this Agreement ... will be entitled to recover from the non-Prevailing Party all reasonable attorneys' fees and costs. 'Prevailing Party' shall mean that Party whose obtained relief is closest to its requested relief." Under the clear dictate of the Agreement, the circuit court determined that Respondents were the Prevailing Parties and, accordingly, awarded them reasonable attorneys' fees and costs. Charter does not challenge the reasonableness of the attorneys' fees awarded; rather, Charter bases these final points on *513 appeal solely on its contention that it, and not Respondents, was the Prevailing Party under the Agreement. Our analysis of the prior points on appeal fully support the circuit court's finding that Respondents are the Prevailing Parties under Section 15(j). The circuit court did not err in finding that res judicata bars Charter's claims, nor did it err in granting judgment in favor of Respondents. Thus, the plain language of the Agreement provides that Respondents are the Prevailing Parties and are entitled to recover from Charter-the non-Prevailing Party-all reasonable attorneys' fees and costs. We refuse to now hold that the circuit court's adherence to the Agreement's terms was "against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." See id. at 431. Points Six and Seven are denied.
Charter and Respondents have filed motions seeking an award of attorneys' fees on appeal, which we now consider. Charter and Respondents again point to Section 15(j) as permitting them to recover reasonable attorneys' fees on appeal as the Prevailing Parties. Because we find in favor of Respondents on all Points, and because we affirm the judgment of the circuit court, as detailed above, we conclude that Respondents are the Prevailing Parties under the Agreement and are entitled to an award of reasonable appellate attorneys' fees. Having reviewed the affidavit and billing statements submitted by Respondents, and fully understanding the requirements of adequately and thoroughly addressing the allegations of legal error raised by Charter, we find that an award of $90,790.17 is reasonable and order Charter to pay that amount to Respondents.
Conclusion
The judgment of the circuit court is affirmed. We grant Respondents' motion for attorneys' fees and accordingly order Charter to pay $90,790.17 to Respondents.
Robert G. Dowd, Jr., P.J. and Sherri B. Sullivan, J., concur.

Section refers to specified provisions of the Agreement.

All Rule references are to Mo. R. Civ. P. (2016).