# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1452

_____

Russell Halbrook, Decedent, through his heir Edith Halbrook; Sandra Cattoor, Decedent, through her heir Dale Cattoor; Frances Bathe, Decedent, through her heir George Bathe; Mary Beatty, Decedent, through her heir Carol Sayre; Arthur Voss, Decedent, through his heir Linda Friedman; William Sayre, Decedent, through his heir Carol Sayre; Alfred Brueggeman, Decedent, through his heir Ashley Pedraza; Frank Kranz, Decedent, through his heir William Kranz; Frank Steinbruegge; James Connelly, Decedent, through his heir Carmen Maher; James Gray, Decedent, through his heir Mary Gray; Jule Ballard, Decedent, through his heir Carol Stallein; John Treiber, Decedent, through his heir Susan Douglas; Myron Harmon, Decedent, through his heir Cynthia Fondren; Lorraine Feissner, Decedent, through her heir Kevin Feissner; Jeanne Strupel, Decedent, through her heir Mary Strupel; Edward Erbe, Decedent, through his heir Joan Elhoffer; Pattie Teutrine, Decedent, through her heir Barbara Tocco; Helen Wiegert, Decedent, through her heir Brian Wiegert; Sharron Walkenhorst, Decedent, through her heir Beverly Manno; Bonnie Ellebracht, Decedent, through her heir Jill Davison; Anthony Tocco, Decedent, through his heir Barbara Tocco; John Carpenter, Decedent, through his heir Shirley Carpenter; Andrian King, Decedent, through his heir Pam Kruse; Andrew Sit, Decedent, through his heir Grace Sit; Elizabeth Erbe, Decedent, through her heir Joan Elhoffer; Michael Martin, Decedent, through his heir Carla Martin; Donald Randall, Decedent, through his heir Lena Wieland; Gary Borthick, Decedent, through his heir Roxanna Stockwell; Dorothy Kranz, Decedent, through her heir William Kranz; Brad Reynolds, Decedent, through his heir Gary Rosenberger; Morris Whitton, Decedent, through his heir Katherine Whitton; Joyce Johnson, Decedent, through her heir Deira Benton; Walter Zwilling, Decedent, through his heir Maureen Kolkmeyer; David Picciuolo, Decedent, through his heir Vicki Picciuolo; John Burch, Decedent, through his heir Josephine Burch; William E. Zahn, Decedent, through his heir William J. Zahn; Eddie Jones, Decedent, through his heir Susie Jones; Richard Brewington, Decedent, through his heir James Brewington; Leffie Fortenberry, Decedent, through his heir Sinola Fortenberry; Sandra Drey, Decedent, through her heir James Drey; Richard Christian, Decedent, through his heir Katherine

Christian; Steven Skurat, Decedent, through his heir Tarae Skurat; Donna Hicks, Decedent, through her heir Dana Xolo Chigo; Ken Reynolds, Decedent, through his heir Gary Rosenberger; Carolyn Lavely, Decedent, through her heir Leon Lavely; James Troll, Decedent, through his heir Kathy Troll; Beverly Breeland-Salas, Decedent, through her heir Armand Salas; Robert Sieger, Decedent, through his heir Michael Sieger; Daniel Kling, Decedent, through his heir Nathan Kling; Bette Clair Bendyk, Decedent, through her heir Heather Bruns; Dorothy Weaver, Decedent, through her heir Cheryl Woodson; Larry Dean Birkla, Decedent, through his heir Janet Walters; Michael Banner, Decedent, through his heir Cathleen Richardson; Janet Banner, Decedent, through her heir Cathleen Richardson; Carol Bleeckert, Decedent, through her heir Ronald Bleeckert; Richard Brennecke, Decedent, through his heir Jean Peters; Thomas Connelly, Decedent, through his heir Suzanne Connelly; James Harmon, Decedent, through his heir Evelyn Morice; Linda Peimann, Decedent, through her heir Jennifer Peimann; Elizabeth Allhoff, Decedent, through her heir Jane Darrish; Gladys Arhontis, Decedent, through her heir Gwyn Beltran; James Siar, Decedent, through his heir Carol Siar; James Quillman, Decedent, through his heir Sandie Quillman-Hollowood; Jason Seithel, Decedent, through his heir Deana Seithel; Joseph Rodgers, Decedent, through his heir Michelle Mitchom; Lloyd Moore, Decedent, through his heir Kathy Moore; Larry Mathers, Decedent, through his heir Connie Mathers; Patricia Moore, Decedent, through her heir Eric Moore; Alfred Brennecke, Decedent, through his heir Debra Dzierwa; Madelyn Bayer, Decedent, through her heir Robert Bayer; Esau Trust, Decedent, through his heir Dorothy Trust; Elizabeth Pedersen; Lois Whitman, Decedent, through her heir Janet Larch

*Plaintiffs - Appellants*

v.

Mallinckrodt, LLC; Cotter Corporation

*Defendants - Appellees*

_____

No. 17-2215

_____

-2-

Minniette Burress, Decedent, by and through their heir Sharee Burress

*Plaintiff - Appellant*

v.

Mallinckrodt LLC; Cotter Corp.

*Defendants - Appellees*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 9, 2018
Filed: April 27, 2018

_____

Before GRUENDER, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff-Appellants assert wrongful-death claims under the public-liability provision of the Price-Anderson Nuclear Industries Indemnity Act (the "Price-Anderson Act" or the "Act") alleging exposure to nuclear radiation. See 42 U.S.C. §§ 2014, 2210. Defendants moved to dismiss claims brought on behalf of persons who passed away more than three years prior to the filing of suit. The district court[1] initially denied the motion, but on reconsideration, granted the motion, citing recent

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

-3-

Missouri Supreme Court authority. The district court held the Act incorporates a Missouri statute of limitations that does not permit application of a discovery rule. The court also rejected Appellants' separate argument that the discovery rule and statute of limitations from the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9658(a)(1) & (b)(4)(A), should apply. We affirm.

I.

Appellants allege their decedents were exposed to radioactive materials handled by Defendants at several sites in the St. Louis area during World War II and the Cold War. The decedents passed away more than three years prior to the filing of suit. Appellants allege they did not know and reasonably could not have known of the cause of injury or the identity of potentially responsible parties before the decedents' deaths. Given the purely legal nature of the issues on appeal, we need not address the factual background further. We do note that Appellants allege a general atmosphere of secrecy and concealment surrounding Defendants' handling of nuclear materials. For example, Appellants label Defendants' activities "top secret" and refer to Defendant Mallinckrodt's participation in the Manhattan Project.

A few brief comments about the Act may aid in understanding the procedural history of this case. Congress passed the Act in part to provide a measure of financial protection for entities involved in the high-risk enterprise of developing the nation's nuclear programs for energy and defense. See O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1095 (7th Cir. 1994) (describing the purpose of the Act as "protect[ing] the public and . . . encourag[ing] the development of the atomic energy industry" (alterations and omissions in original) (quoting 42 U.S.C. § 2012(i))). Many years later, Congress added a public-liability provision, creating a federal cause of action for injuries caused by nuclear exposure. See Price-Anderson Amendments Act of 1988, Pub. L. No. 100-408, § 11, 102 Stat. 1066 (adding 42 U.S.C.

§ 2014(hh)). This amendment incorporates substantive state-law standards for liability. See 42 U.S.C. § 2014(hh) ("A public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.").

The Act distinguishes between injuries arising from major, widespread releases of radiation and those arising from more limited releases. The "Nuclear Regulatory Commission or the Secretary of Energy, as appropriate" is authorized to declare a nuclear incident an "extraordinary nuclear occurrence" ("ENO"). See id.§ 2014(j). For claims arising from an ENO, the Act creates a statute of limitations that incorporates a discovery rule and expressly permits the waiver of defenses. 42 U.S.C. § 2210(n)(1). In contrast, the Act includes no limitation or waiver-of-defense provisions for "regular," non-ENO claims. For regular claims under the Act, state laws governing limitation periods and claim accrual, like other aspects of state law, apply where states treat such laws as "substantive rules for decision." Id. § 2014(hh); see also Nieman v. NLO, Inc., 108 F.3d 1546, 1561 (6th Cir. 1997) ("[P]resumably Congress intended not to alter the state law statutes of limitations for nuclear incidents that are not ENOs . . . to the extent they are not inconsistent with § 2210 as required by § 2014[.]").

Against this backdrop, Defendants moved for dismissal, citing Missouri's statute of limitations for wrongful-death claims. See Mo. Rev. Stat. § 537.100. The district court initially denied the motion, determining that section 537.100 was a substantive rule governing the present claims but also determining the possible application of a discovery rule precluded dismissal. Then, after the district court issued its order, the Missouri Supreme Court issued two partially inconsistent opinions interpreting section 537.100. See Boland v. Saint Luke's Health Sys., Inc., 471 S.W.3d 703 (Mo. banc 2015); Missouri ex rel. Beisly II v. Perigo, 469 S.W.3d

-5-

434 (Mo. banc 2015). The district court determined that, although both cases rejected the application of a discovery rule for determining claim accrual, the cases were at least partially inconsistent in that Boland also rejected a theory of equitable estoppel. Beisly, in contrast, held a wrongful-death defendant could be equitably estopped from asserting a statute-of-limitations defense if the defendant's fraudulent concealment caused the plaintiff's untimeliness. Beisly, 469 S.W.3d at 444 ("Equitable estoppel does not toll the running of the statute. Rather, it forecloses the wrongdoer, who concealed his or hear actions fraudulently, from asserting the defense.").

Based on these conclusions, the district court granted Defendants' motion to dismiss, finding no discovery rule could be applied. The district court determined any difference between Boland and Beisly's treatment of equitable estoppel did not change the result because Appellants "never alleged that Defendants engaged in fraudulent concealment." Finally, Appellants argued federal law applied for determining claim accrual such that a discovery rule could be applied to contamination-based claims pursuant CERCLA. The district court rejected this argument, holding the CERCLA provisions asserted by Appellants applied only to claims arising under state law whereas claims under the Act were federal claims that merely incorporated state-law standards.

## II.

We review de novo the district court's grant of a motion to dismiss. Mick v. Raines, 883 F.3d 1075, 1078 (8th Cir. 2018). When called upon to interpret state law, our role is to follow the law as decided by that state's highest court. Progressive N. Ins. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010). Absent clear direction from that court, we must conduct our analysis as a predictive exercise, interpreting state law in the manner we believe the state's highest court would rule. Id.

A. Missouri's Wrongful Death Statute of Limitations

We first address the Missouri Supreme Court's opinions in Boland and Beisly. In Boland, the court held no discovery rule could be applied to section 537.100, and claim accrual could not be tolled by a tortfeasor's concealment of its wrongful acts. 471 S.W.3d at 710 ("The language of section 537.100 is unambiguous, and this Court's precedent is clear: the plaintiffs' claims accrued at the decedents' deaths, and section 537.100 does not provide for delayed accrual under these circumstances."). The Boland plaintiffs alleged a hospital employee murdered their family members with intentional overdoses of insulin and other substances. Id. at 705. The plaintiffs sued the hospital, alleging the hospital initially concealed its suspicions about the deaths, and later concealed actual facts about the situation. Id. at 705–06. According to the plaintiffs, the hospital's concealment of facts and suspicions allowed the pattern of murders to continue and subsequently prevented discovery of the "circumstances surrounding the deaths of their family members." Id. at 706. Recognizing the outcome was harsh, the court nevertheless concluded the plain language of Missouri's wrongful-death statute did not permit application of a discovery rule or tolling. Id. at 710. The court also rejected equitable estoppel, concluding the statute could not accommodate a "fraudulent concealment exception." Id. at 712–13.

In Beisly, the composition of the court differed from that in Boland; a court of appeals judge sat with the en banc court due to a recusal. The Beisly court agreed with Boland regarding the inapplicability of a discovery rule. 469 S.W.3d at 444 ("The cause of action still accrues at the decedent's death, and the statute of limitations begins to run at that time."). Beisly differed from Boland, however, in that Beisly held a defendant could be equitably estopped from asserting a statute of limitations if the defendant's fraudulent concealment of its own wrongful acts prevented the plaintiffs from discovering the basis for their claims. Id. ("The application of equitable estoppel does nothing to engraft a tolling mechanism or

otherwise extend the statute of limitations beyond what is stated expressly in the statute. . . . Rather, it forecloses the wrongdoer, who concealed his or her actions fraudulently, from asserting the defense.").

The facts of Beisly were compelling in that two murderers' own acts of concealment delayed discovery of their involvement in the offense. Id. at 436 (noting that the murderers evaded detection by "(1) disguising the nature of the decedent's death by staging it to look like a home invasion and using a weapon that could not be traced; (2) lying to law enforcement; (3) destroying evidence; and (4) denying their involvement in the decedent's death"). The facts of Beisly, however, were not necessarily distinguishable from those in Boland in a manner sufficient to justify the different outcome. In fact, at least some members of the court acknowledged that the opinions were contradictory rather than distinguishable. See, e.g., Boland, 471 S.W.3d at 713–14 (Draper, J., concurring in part and dissenting in part) ("I believe the holding in . . . Beisly . . . , handed down this same day and addressing this precise legal issue, supports the plaintiffs' claim that the doctrine of equitable estoppel forecloses the hospital from relying on the wrongful death statute of limitations as an affirmative defense due the fraudulent concealment of its wrongdoing."); Beisly, 469 S.W.3d at 445 (Fischer, J., dissenting) ("In my view, this Court should not have issued the majority opinion in this case that is contrary to the position taken by a majority of the regular members of this Court in Boland, especially as the majority in this case was only possible with the assistance of a special judge from the Court of Appeals, Western District.").

Fortunately, we need not attempt to resolve the tension between these two cases. Both cases agree no discovery rule applies, and Beisly, at most, permits a plaintiff to invoke equitable estoppel if a defendant's own acts of fraud caused the plaintiff's untimeliness. But here, Appellants allege merely that Defendants conducted their affairs with secrecy; they do not allege anything in the nature of fraud. Moreover, Appellants failed to assert a theory of fraudulent concealment in

the district court. Rather, they raised the issue for the first time in their appeal brief. And, Appellants failed to respond after Defendants argued Appellants had not raised fraudulent concealment in the district court. "Ordinarily, we will not consider an argument raised for the first time on appeal." United States v. Hirani, 824 F.3d 741, 751 (8th Cir. 2016). As such, we agree with the district court: Boland and Beisly's common ground, rather than their differences, control the present case. The Appellants' wrongful-death claims are untimely.

## B. CERCLA Statute of Limitations

In an attempt to avoid application of Missouri law, Appellants seek to invoke CERCLA by characterizing their decedent's injuries as having been caused "by exposure to any hazardous substance, or pollutant or contaminant." 42 U.S.C. § 9658(a)(1). Citing this provision, Appellants argue CERCLA provides a discovery rule that delays claim accrual and expressly preempts any state law that would impose an earlier commencement date.[2]  See id. § 9658(b)(4)(A) ("'[F]ederally required commencement date' means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.").

---

[2]CERCLA, at § 9658(a)(1), provides in full:

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

We conclude the district court correctly rejected Appellants' argument in this regard because CERCLA's claim-accrual provision applies only to claims "brought under State law." Id. § 9658(a)(1). The Act itself states clearly how we are to characterize the present claims:

> The term "public liability action", as used in section 2210 of this title, means any suit asserting public liability. A public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.

42 U.S.C. § 2014(hh). Section 2210(n)(2), in turn, provides that federal jurisdiction over such actions is "original jurisdiction without regard to the citizenship of any party or the amount in controversy." Read together, these provisions show Congress created a federal cause of action for public-liability claims concerning nuclear incidents. Congress expressly invoked federal-question jurisdiction in the Article III courts, rather than diversity jurisdiction, and incorporated state law only to the extent consistent with the Act. Congress spoke clearly when stating such "action shall be deemed to be an action arising under" federal law.[3]

_____

[3]The Third Circuit and the Seventh Circuit have addressed similar questions and explained convincingly why claims under the Act are claims under federal rather than state law. See In re TMI, 89 F.3d 1106, 1114 (3d Cir. 1996) ("[Congress] did not . . . simply grant federal courts subject matter jurisdiction over all cases arising from nuclear accidents. Instead it created substantive federal law governing nuclear accidents in the choice of law provision of the Amendments Act . . . ."); id. at 1114 n.7 ("Article III of the Constitution limits the type of cases that federal courts . . . may hear. For this reason, H.R. 1414 expressly states that any suit asserting public liability shall be deemed to be an action arising under the [Act], thereby making suits asserting public liability 'Cases . . . arising under . . . the laws of the United States' within the meaning of Article III." (quoting H.R. Rep. No. 104, 100th Cong., 1st Sess., Pt. 1, at 18 (1987))); O'Conner, 13 F.3d at 1099 ("Because . . the [Price Anderson] Amendments Act embodies substantive federal policies and does not

In summary, Missouri's wrongful-death statute of limitations applies and does not permit tolling. To the extent equitable estoppel due to fraudulent concealment might be permitted under Missouri law, Appellants failed to raise the issue of fraudulent concealment in the district court. Finally, CERCLA's provisions governing actions brought under state law are inapplicable to the present claims.

We affirm the judgment of the district court.

_____

merely create federal jurisdiction for a state claim, we must conclude that Article III's 'arising under' requirement has been met."); In re TMI Litig. Cases Consol. II, 940 F.2d 832, 855 (3d Cir. 1991) ("[S]tate law provides the content of and operates as federal law."). These cases addressed the history of the federal court's jurisdiction over cases "arising under" the laws of the United States. They also addressed the legislative history of the Act, the evolution of public-liability provisions of the Act, the overall context of comprehensive federal regulation of nuclear activities, and the difference between mere congressional grants of jurisdiction over state claims and congressional creation of substantive federal law through the incorporation of state law. As comprehensive as these other courts' analyses are, we find it unnecessary to rely on these cases or repeat their analyses to reach the same conclusion. We are persuaded by the plain language of the Act.