[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15104
_____

D.C. Docket Nos. 9:10-cv-80883-KAM,
9:14-cv-81385-KAM


MAGALY PINARES, et al., 9:10-cv-80883-KAM

Plaintiffs,

CYNTHIA SANTIAGO, et al.,

Consol. Plaintiffs,

JOSELYN SANTIAGO,
STEVE SANTIAGO,

Consol. Plaintiffs - Appellants,

versus

UNITED TECHNOLOGIES CORPORATION,
d.b.a. Pratt & Whitney,

Defendant,

RAYTHEON TECHNOLOGIES CORPORATION,
d.b.a. Pratt & Whitney,

Defendant - Appellee.

_____

CYNTHIA SANTIAGO, 9:14-cv-81385-KAM
a single woman,

                                                    Plaintiff,

JOSELYN SANTIAGO,
STEVE SANTIAGO,

                                                    Plaintiffs - Appellants,

versus

UNITED TECHNOLOGIES CORPORATION,
d.b.a. Pratt & Whitney, a Connecticut corporation,


                                                    Defendant,

RAYTHEON TECHNOLOGIES CORPORATION,
d.b.a. Pratt & Whitney,

                                                    Defendant - Appellee.

                    _____

                Appeal from the United States District Court
                   for the Southern District of Florida
                    _____

                         (August 31, 2020)

Before LUCK, ED CARNES and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

    A provision of the Comprehensive Environmental Response, Compensation

and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq., offers discovery

tolling to plaintiffs injured by exposure to hazardous substances.  This provision

2

tolls the statute of limitations until a plaintiff knows (or reasonably should have known) her injury was caused by a hazardous substance, or until the plaintiff reaches the age of majority.  See 42 U.S.C. § 9658(a)(1), (b)(4)(A), (B)(i).  The appellants, Joselyn and Steve Santiago, seek the benefit of that tolling provision.  Their daughter, Cynthia, tragically passed away from brain cancer at the age of twenty, and the Santiagos say that Pratt & Whitney exposed Cynthia to the radioactive chemicals that caused her fatal tumor to form.  Because Cynthia filed this lawsuit within months of turning eighteen and discovering the cause of her cancer, the Santiagos argue that their suit is timely.

The central problem with their claim, however, is that CERCLA's discovery-tolling provision is not available to them.  By its own terms, that provision applies only to actions "brought under State law."  Id. § 9658(a)(1).  But the Santiagos' lawsuit is a public liability action brought exclusively under federal law -- the Price-Anderson Act, Pub. L. 85-256, 71 Stat. 576 (1957), as amended in 1988.  See 42 U.S.C. §§ 2014(hh), 2210(n)(2).  These actions borrow their "substantive rules for decision" from the state where the incident occurred, and in this case, that means Florida's four-year statute of limitations governs.  Cynthia filed this lawsuit long after the expiration of that statute of limitations.  Thus, we are required to hold that the Santiagos' claims are untimely and affirm the judgment of the district court.

3

I.

The essential facts and procedural history are these. In 1996, when she was four months old, Cynthia Santiago moved with her family to a residential area known as the Acreage, in Palm Beach County, Florida. Near the Acreage -- around ten miles from Cynthia's home -- is an undeveloped tract of land which Pratt & Whitney purchased in 1957.[1] Pratt & Whitney conducted various research and development tests there, and over time, those tests contaminated the soil. By 1993, most of the soil at the testing site required removal. Cynthia's parents allege that between 1993 and 2000, Pratt & Whitney excavated tens of thousands of tons of contaminated soil. The soil was eventually transported and sold as "fill" for the construction and development of the Acreage community. The Santiagos also claim that runoff from the contaminated soil leached into the Acreage's water supply.

In 2009, the Florida Department of Health found a cluster of pediatric brain cancer cases in the Acreage. The Santiagos say that the number of brain cancer diagnoses in the cluster was seven times greater than the background expectation. And they claim that there was less than a 1% chance the cluster would have formed

---

[1] Cynthia originally brought this suit against United Technologies Corporation ("UTC"), which has since merged with Raytheon Company to form Raytheon Technologies Corporation ("Raytheon"). On April 22, 2020, following the merger, UTC moved this Court to substitute Raytheon as the appellee. We granted the motion on May 4, 2020. Since UTC did, and Raytheon now does business under the name Pratt & Whitney, we'll refer to the appellee as Pratt & Whitney.

on its own.  One of the cases in the cluster, the Santiagos say, was Cynthia's.  In 2009, at age thirteen, doctors diagnosed Cynthia with ependymoma, which the Santiagos characterized as a type of brain cancer that occurs most often in young children.  The Santiagos assert that Pratt & Whitney caused Cynthia's cancer by exposing her to the radioactive isotope thorium-230, referred to more formally as a radionuclide.  Cynthia's ependymoma metastasized to her spine in 2013, the Santiagos say.  Doctors detected an amount of thorium-230 in Cynthia's spine hundreds of times higher than would normally be expected, in fact multiple magnitudes greater than levels found even in a uranium miner.

Cynthia turned eighteen in March 2014 and filed suit against Pratt & Whitney in the United States District Court for the Southern District of Florida on November 7, 2014.  When she was deposed, Cynthia said she was unaware of any contamination in the Acreage until 2014, after she had spoken with an attorney. Cynthia tragically passed away from the cancer in 2016, at age twenty.  The spinal tumor was recognized as the cause of her death.

After Cynthia died, the Santiagos, with leave of court, amended the complaint.  The amended complaint appears to assert two Florida-law claims and one federal claim.  The first state-law claim purports to allege wrongful death through negligence (Count I).  The second state-law claim purports to allege

wrongful death through trespass (Count II).[2]  And the federal claim asserts

damages arising from a nuclear incident, pursuant to the Price-Anderson Act, 42

U.S.C. § 2210(n)(2) (Count III).[3]

Pratt & Whitney moved for summary judgment, arguing, among other

things, that the state wrongful-death claims based on negligence and trespass were

subject to a four-year statute of limitations under Florida law, which began to

accrue upon the diagnosis of Cynthia's cancer on November 27, 2009.[4]  Thus, the

---

[2] The Santiagos say their state claims are "grounded in Florida common law."  As the Florida Supreme Court has recognized, however, wrongful-death actions are not available under Florida common law.  See Toombs v. Alamo Rent-A-Car, Inc., 833 So. 2d 109, 111 (Fla. 2002) ("An action for wrongful death is a purely statutory right."); Fla. E. Coast Ry. Co. v. McRoberts, 149 So. 631, 632 (Fla. 1933) ("The common law afforded no remedy for death by wrongful act. Hence the right and the remedy are purely statutory.").  Instead, Florida's Wrongful Death Act created a statutory cause of action for wrongful death, see Fla. Stat. § 768.19, "which was not recognized at common law."  Nissan Motor Co. v. Phlieger, 508 So. 2d 713, 714 (Fla. 1987).

[3] In their amended complaint, the Santiagos recast Cynthia's original claim for negligence, breaking it into two counts for negligence (Count I) and for trespass (Count II) under Florida law.  They retained Cynthia's Price-Anderson Act claim (Count III), and dropped Cynthia's claim for strict liability under Fla. Stat. § 376.313.  The Santiagos' amended complaint added a fourth count arising under Florida's civil RICO statute, Fla. Stat. § 772.101 et seq.  The district court granted Pratt & Whitney's motion to dismiss that claim.  The Santiagos do not challenge that ruling on appeal.

[4] The Florida statute of limitations provides:

> Actions other than for recovery of real property shall be commenced as follows:
> . . .
> (3) Within four years. --
> (a) An action founded on negligence.
> . . .
> (g) An action for trespass on real property.

Fla. Stat. § 95.11.

6

state claims, which were not brought by Cynthia until November 7, 2014 -- nearly five years after her diagnosis -- were untimely.  As for the federal claim, Pratt & Whitney urged the district court to borrow the most analogous state-law claim's statute of limitations (here, Florida's four-year period for negligence and trespass).  Accordingly, Pratt & Whitney said the federal claim was time barred as well.

The Santiagos raised several tolling arguments in the district court.  Their primary argument, however, and the only one pursued in this appeal, relies on a discovery-tolling provision found in CERCLA.  The district court rejected the argument because their suit was a public liability action brought pursuant to the exclusive provisions found in the federal Price-Anderson Act.  In public liability actions, the courts are required to apply "the limitations period of the state where" the incident occurred -- here, Florida.

This timely appeal followed.

## II.

At the summary judgment stage, we "tak[e] all of the facts in the record and draw[] all reasonable inferences in the light most favorable to the non-moving party."  Peppers v. Cobb County, 835 F.3d 1289, 1295 (11th Cir. 2016).  We review the district court's order granting summary judgment to Pratt & Whitney de novo.  Id.  Likewise, we exercise de novo review over questions of statutory

interpretation.  Barrientos v. CoreCivic, Inc., 951 F.3d 1269, 1276 (11th Cir. 2020).

The Santiagos' lawsuit is a public liability action arising under the Price-Anderson Act ("PAA").  Congress enacted the PAA in 1957 "to encourage the development of the atomic energy industry" while "protect[ing] the public" from injuries caused by "nuclear incidents."  42 U.S.C. § 2012(i); see also Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 64 (1978).  Congress amended the PAA with the passage of the Price-Anderson Amendments Act of 1988 (the "Amendments Act"), which created "an exclusive federal cause of action for radiation injury."  Roberts v. Fla. Power & Light Co., 146 F.3d 1305, 1306 (11th Cir. 1998) (per curiam).  The Amendments Act vested the federal courts with original jurisdiction over "any public liability action arising out of or resulting from a nuclear incident."  42 U.S.C. § 2210(n)(2).  The statute defined a "public liability action" as "any suit asserting public liability."  Id. § 2014(hh).  Public liability, in turn, is defined as "any legal liability arising out of or resulting from a nuclear incident," subject to certain exceptions not relevant here.  Id. § 2014(w).

The PAA directs the federal courts to borrow the "substantive rules for decision" in public liability actions "from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with" federal law.  Id.  Thus, Florida law provides the applicable statute of limitations in this case.  As

8

we've said, Florida law required Cynthia to file her lawsuit within four years of her cancer diagnosis.  See Fla. Stat. § 95.11(3)(a), (g).  Because she did not, her claims are time barred.

The Santiagos resist this conclusion.  But they point us to no Florida law that tolls the statute of limitations.  Instead, they rely on a discovery-tolling provision found in a different federal statute, CERCLA, in 42 U.S.C. § 9658.  Section 9658 of CERCLA tolls state-law statutes of limitations until (1) "the date the plaintiff knew (or reasonably should have known) that" her "personal injury" was "caused or contributed to by" a "hazardous substance"; or (2) in "the case of a minor, the date on which the minor reaches the age of majority, as determined by State law." 42 U.S.C. § 9658(b)(4)(A), (B)(i).  Under Florida law, the age of majority is eighteen.  See Fla. Stat. § 743.07.  The Santiagos say their lawsuit was timely because it was filed just months after Cynthia turned eighteen and discovered the cause of her cancer.  CERCLA's tolling provision, however, applies only to an "action brought under State law for personal injury" which is "caused or contributed to by exposure to any hazardous substance."  Id. § 9658(a)(1).  The trouble with the argument is that public liability actions cannot be "brought under State law," as § 9658 requires.  Because this action was instead brought exclusively under federal law -- the PAA -- the Santiagos cannot avail themselves of CERCLA's discovery-tolling provision.

9

We start with the plain meaning of the phrase "action brought under State law." When confronted with a question of statutory interpretation, our first task is to simply look at what the words say. As we have explained:

> The first rule in statutory construction is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute. We must presume that Congress said what it meant and meant what it said. In our circuit, when the import of the words Congress has used is clear we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language.

Shotz v. City of Plantation, 344 F.3d 1161, 1167 (11th Cir. 2003) (alterations adopted) (ellipsis and quotations omitted). And when the language at issue is a legal term of art, the phrase's "ordinary legal meaning is to be expected . . . . As Justice Frankfurter eloquently expressed it: '[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'" Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012) (alteration in original) (quoting Felix Frankfurter, Some Reflections on the Reading of Statutes, 47 Colum. L. Rev. 527, 537 (1947)).

Here, the phrase "brought under" is one of common legal parlance. Simply put, a suit is brought under the law which supplies its cause of action. And a cause of action creates, enables, and allows the litigation of a claim. See Cause of Action, Black's Law Dictionary (11th ed. 2019) (defining "cause of action" as that

10

which "entitles one person to obtain a remedy in court from another person" or which "giv[es] rise to one or more bases for suing"). To "bring an action" means to "sue." Bring an Action, Black's Law Dictionary (11th ed. 2019). And to sue "under" a law is to sue pursuant to, or as authorized by, the cause of action created by that law. See Pursuant To, Black's Law Dictionary (11th ed. 2019) ("As authorized by; under." (emphasis added)). Thus, for example, the Supreme Court has explained that the "vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986) (emphasis added).

With this in mind, we turn to the instant claims. Through the Amendments Act, Congress vested the federal courts with original jurisdiction over public liability actions. See 42 U.S.C. §§ 2014(hh), 2210(n)(2). Congress stated that each public liability action "shall be deemed to be an action arising under section 2210 of this title." Id. § 2014(hh). Our Court has unambiguously interpreted these provisions as creating an exclusive federal cause of action for nuclear incidents. See Roberts, 146 F.3d at 1306 (explaining that the Amendments Act created "an exclusive federal cause of action for radiation injury"). And we are hardly alone in this interpretation. See, e.g., Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000) (explaining that "Congress intended to create an exclusive federal cause

11

of action for torts arising out of nuclear incidents"); Corcoran v. N.Y. Power Auth., 202 F.3d 530, 537 (2d Cir. 1999) (explaining that the Amendments Act created "an exclusive federal cause of action for radiation injury" (emphasis in original)).

Thus, a public liability action can never be "brought under State law." All public liability actions must be brought exclusively under federal law. As the Supreme Court has explained, the PAA "transforms into a federal action 'any public liability action arising out of or resulting from a nuclear incident.'" El Paso Nat. Gas Co. v. Neztsosie, 526 U.S. 473, 484 (1999) (emphasis added) (quoting 42 U.S.C. § 2210(n)(2)). A plaintiff can bring a public liability action as a "federal claim" under the PAA "or not at all." Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir. 1997); see also O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1099 (7th Cir. 1994) ("After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of a nuclear incident is compensable under the terms of the Amendments Act or it is not compensable at all." (quoting In re TMI Litig. Cases Consol. II (TMI II), 940 F.2d 832, 854 (3d Cir. 1991))). In other words, "state regulation of nuclear safety . . . is preempted by federal law." Roberts, 146 F.3d at 1308 (quoting O'Conner, 13 F.3d at 1105).

That conclusion brings us to the end of our analysis: the Santiagos' claims are time barred. We know that the Santiagos' lawsuit is a public liability action because they have alleged "legal liability arising out of or resulting from a nuclear

12

incident" -- specifically, they claim injury arising from exposure to thorium.  See 42 U.S.C. § 2014(w), (hh); see also id. § 2014(q), (z) (defining "nuclear incident" as "any occurrence" causing "bodily injury, sickness, disease, or death" that arises out of or results "from the radioactive, toxic, explosive, or other hazardous properties" of any "source" material, including thorium).  We also know that the Santiagos brought their public liability action -- just like all plaintiffs bring all public liability actions -- exclusively under federal law.  Thus, the Santiagos cannot avail themselves of CERCLA's tolling provision.  Instead, as the district court properly found, the PAA points us to Florida law for the applicable statute of limitations.  And under Florida law, Cynthia's claims are untimely.

The PAA's broader statutory context and its unmistakable purpose fully support the conclusion we reach.  Looking first to statutory context, we note that elsewhere in the PAA, Congress expressly contemplated discovery tolling.  Thus, for claims arising from an "extraordinary nuclear occurrence," Congress allowed for tolling "within three years from the date on which the claimant first knew, or reasonably could have known, of his injury or damage and the cause thereof."[5]  42 U.S.C. § 2210(n)(1).  Since Congress knew how to provide for discovery tolling -- but chose not to -- the "familiar 'easy-to-say-so-if-that-is-what-was-meant' rule of statutory interpretation has full force here. The silence of Congress is strident."

---

[5] It is undisputed that Cynthia's injury was not the result of an "extraordinary nuclear occurrence."

13

Scalia & Garner, Reading Law at 181–82 (quoting Comm'r v. Beck's Estate, 129 F.2d 243, 245 (2d Cir. 1942)).  And "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  Russello v. United States, 464 U.S. 16, 23 (1983) (alteration adopted and quotation omitted); see also Va. Uranium, Inc. v. Warren, 139 S. Ct. 1894, 1900 ("In this, as in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write."); Animal Legal Def. Fund v. U.S. Dep't of Agric., 789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something but chooses not to, its silence is controlling." (quotation omitted)).  Had Congress wanted to displace state law by imposing discovery tolling for public liability actions, it knew how to say so, as it did elsewhere in the PAA.

The text and structure of the PAA undercuts the Santiagos' argument that they might simultaneously bring their claims under both federal and state law.  Though the Santiagos accept that their public liability action arises under federal law, they make much of the fact that public liability actions borrow their "substantive rules for decision" from state law.  42 U.S.C. § 2014(hh).  According to the Santiagos, this means public liability actions are also "brought under State law."  But the Amendments Act says that a "public liability action" is "any suit

14

asserting public liability." Id. (emphasis added). And "public liability" is "any legal liability arising out of or resulting from a nuclear incident," subject only to exceptions not relevant here. Id. § 2014(w) (emphasis added). "As we have often had occasion to say, when interpreting a statute, 'any' means 'all.'" United States v. Caniff, 955 F.3d 1183, 1190 (11th Cir. 2020) (per curiam); see also TMI II, 940 F.2d at 854 (emphasizing that under § 2014(hh), a "'public liability action' encompasses 'any legal liability' of any 'person who may be liable' on account of a nuclear incident" and noting the "breadth of this definition" (emphases in original)). Congress left no room for the Santiagos' argument -- instead, as we have explained, Congress directed that all public liability actions must be brought only under federal law.

Moreover, while public liability actions derive their "substantive rules for decision" from state law, they do so only to the extent "such law is [not] inconsistent with" federal law. 42 U.S.C. § 2014(hh). This express limitation on the incorporation of state law in public liability actions underscores that those actions are federal in nature, regardless of the source of law Congress chose to borrow. We emphasized in Roberts that a PAA claim is a wholly federal cause of action in an area Congress earmarked as "the exclusive business of the Federal Government," even though the statute incorporates some state law. Roberts, 146 F.3d at 1308 (quoting Pac. Gas & Elec. Co. v. State Energy Res. Conservation &

15

Dev. Comm'n, 461 U.S. 190, 208 (1983)).  And while we did describe public

liability actions in Roberts as "hybrid actions," id. at 1307, to say a public liability

action is a "hybrid" is not to say it is simultaneously brought under both federal

and state law.  Rather, this reflects only the simple premise that a public liability

action derives its substantive rules for decision from state law, and even then only

to the extent consistent with federal law.

The United States Court of Appeals for the Eighth Circuit reached the same

result in Halbrook v. Mallinckrodt, LLC, 888 F.3d 971 (8th Cir. 2018).  There, the

court considered the plaintiffs' "wrongful-death claims under the public-liability

provision of the" PAA.  Id. at 973.  Missouri law, like Florida law here, did not

allow "application of a discovery rule."  Id.  And the court concluded that

CERCLA's discovery-tolling provision did not apply, since a public liability action

is brought under federal, rather than state, law.  Id. at 977–78.  The Eighth Circuit

reasoned that "Congress spoke clearly when stating" a public liability "'action

shall be deemed to be an action arising under' federal law."  Id. at 977 (quoting 42

U.S.C. § 2014(hh)).  Thus, it concluded, "CERCLA's provisions governing actions

brought under state law are inapplicable to" public liability actions brought under

the PAA.  Id. at 978.

The statute's unmistakable purpose is fully consonant with this conclusion.

It is beyond dispute that Congress intended for the federal government, and not the

16

states, to have control over issues of nuclear injury.  As we have observed, Congress "established a comprehensive federal framework governing the nuclear power industry" and "granted the federal government a monopoly on the development of nuclear power."  Roberts, 146 F.3d at 1306; see also Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 249 (1984) ("[T]he federal government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the states." (quoting Pac. Gas & Elec., 461 U.S. at 212)).  The PAA was part and parcel of that effort.  Roberts, 146 F.3d at 1306.  Against the backdrop of the congressional decision to take control from the states and create a federal "monopoly" in the arena of nuclear energy, id., we do not doubt that Congress intended for plaintiffs to bring public liability actions solely under federal law.

The long and short of it is that the Santiagos' public liability action against Pratt & Whitney is not an "action brought under State law."  42 U.S.C. § 9658(a)(1).  Instead, as the PAA makes plain, the Santiagos have brought their claims exclusively under federal law.  Thus, they may not avail themselves of CERCLA's discovery-tolling provision.  Because their claims are subject instead to Florida's four-year statute of limitations, their claims are time barred.

**AFFIRMED.**

17